**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**CHRISTINE MILLS, et al.,**

**Plaintiffs,**

**v.**                                             **Civil Action 04-02205 (HHK)**

**JAMES H. BILLINGTON,**

**Defendant.**

---

**MEMORANDUM OPINION AND ORDER**

Plaintiffs bring this action on behalf of a putative class of individuals who have been

employed by, or sought employment with, the Library of Congress ("LOC") from approximately

January 1, 2003, to December 20, 2004.  Plaintiffs assert a variety of claims alleging

discrimination on the basis of color, national origin, and/or race pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, as well as 42 U.S.C. § 1981.  Defendant James H.

Billington, the Librarian of Congress, moves to dismiss plaintiffs' complaint under Fed. R. Civ.

P. 12(b)(1) based on plaintiffs' asserted failure to exhaust their administrative remedies.  Upon

consideration of LOC's motion, the opposition thereto, and the record of this case, the court

concludes that LOC's motion must be denied.

**I.  BACKGROUND**

Plaintiffs seek judicial review of a wide range of LOC personnel policies and practices.

Specifically, plaintiffs maintain that manifestations of LOC's discriminatory conduct are visible

in: "selections for competitive positions and promotions, transfers, assignments and other career

enhancing opportunities; preferred assignments; discipline, awards and bonuses; [and] training."

Compl. ¶ 1.  In addition, plaintiffs charge that they have been subjected to harassment, a hostile

work environment, and retaliation for the assertion of their protected rights.  *Id.*

Plaintiffs first brought their concerns to the attention of LOC on May 28, 2004, when

three black LOC employees—Christine Mills, Amy Barnes and Priscilla Ijeomah—assumed the

role of "class agents"[1] and filed an informal class action complaint with LOC's Equal

Employment Opportunity Complaints Office ("EEOCO").  In response to plaintiffs' informal

complaint, LOC retained a private firm—Delany, Siegal & Zorn—to conduct counseling related

to the class agents' claims.  As part of its counseling services, Delany, Siegal, & Zorn acquired

the assistance of Claudia Withers, a principal in the firm of Winston, Withers and Associates,

Inc., a consulting agency with expertise in the litigation and settlement of employment disputes.

On July 15, 2005, Withers attended a meeting with Mills, Barnes, Ijeomah, and their

representative, Howard Cook.  According to Withers, one of the primary purposes of the meeting

was to elicit as much information as possible about the precise nature of plaintiffs'

discrimination claims, including the positions held by members of the alleged class, and the dates

upon which specific acts of discrimination took place.  In addition to this initial meeting, Withers

arranged a second meeting with the class agents on August 18, 2005, and a separate meeting with

LOC's management representative, Jesse James, on August 10, 2004.

At the conclusion of her investigation, Withers prepared an EEO Counselor's Report.  In

her Counselor's Report, Wither's stated that "[w]hen asked, the class agents did not or could not

identify incidents of alleged discrimination specific to themselves but instead referred the

---

[1]  Under Library of Congress regulations, an "agent of the class" is defined as "a
class member who acts for the class during the processing of the class complaint."  LCR
2010-3.2 § 3(c).

counselor to the May 28, 2004, letter of Ms. Mills, Ijeoamah, and Barnes." Def.'s Mot. to

Dismiss, Ex. 5 at 5 (EEO Counselor's Report).  In addition, Withers reported that she "made

several attempts to get the class agents to provide precise dates for the acts of discrimination they

complained of; however, they, and their representative . . would not identify specific dates . . . ."

*Id.* at 1.

Withers's EEO Counselor's Report was presented to LOC's EEOCO on September 7,

2004.  Based on this report, LOC's EEOCO issued a decision, dated September 20, 2004, that

canceled plaintiffs' complaint.  The EEOCO concluded that plaintiffs' refusal to provide specific

information to Withers and unwillingness to actively participate in the counseling sessions

constituted a failure to exhaust their administrative remedies.

This action followed.

## II.  ANALYSIS

### A.  Standard of Review

LOC argues that because plaintiffs failed to exhaust their administrative remedies this

court lacks jurisdiction to adjudicate their claims.  Accordingly, LOC moves to dismiss plaintiffs'

complaint pursuant to Fed. R. Civ. P. 12(b)(1).[2]

---

[2] Plaintiffs maintain that LOC's motion to dismiss must be converted to a motion for summary judgment given its reliance on matters outside the pleadings.  Plaintiffs are wrong.  LOC has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), not 12(b)(6).  When analyzing a motion under Rule 12(b)(1), the court is permitted to consider documents outside the pleadings to assist in its jurisdictional inquiry and is not required to convert the motion to a motion for summary judgment. *See Land v. Dollar,* 330 U.S. 731, 735 n. 4 (1947); *Haase v. Sessions,* 835 F.2d 902, 906 (D.C. Cir. 1987) ("In 12(b)(1) proceedings, it has been long accepted that the judiciary may make 'appropriate inquiry' beyond the pleadings to 'satisfy itself on authority to entertain the case.'") (citations omitted); *Artis v. Greenspan,* 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of

LOC is indeed correct that federal employees must exhaust their administrative remedies prior to bringing suit under Title VII. *See, e.g., Bayer v. Dep't of Treasury*, 956 F.2d 330, 332 (D.C. Cir. 1992). It is well-settled that a plaintiff's failure to exhaust her administrative remedies will deprive a district court of subject matter jurisdiction, *Artis v. Greenspan,* 158 F.3d 1301, 1302 (D.C. Cir. 1998), and that before a federal court may hear a case, it must ascertain whether it has jurisdiction over the underlying subject matter of the action, *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.").

A defendant may contest the legitimacy of the court's jurisdiction either through attacking the complaint "on its face" or by attacking "the factual truthfulness of its averments." *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted). A facial challenge focuses on "the factual allegations of the complaint" as expressed on "the face of the complaint," while a factual challenge targets those facts underlying the complaint. *Loughlin v. United States,* 230 F. Supp. 2d 26, 35–36 (D.D.C. 2002) (citations omitted). Under either type of challenge, the plaintiff bears the burden of proving jurisdiction. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182–183 (1936); *Land*, 330 U.S. at 735. In the instant case, LOC raises a factual challenge as it disputes plaintiffs' contention that they took all necessary steps to exhaust their administrative remedies, as well as their assertion that they sought to address their grievances

---

venue, personal jurisdiction, or subject-matter jurisdiction.") (citation omitted); *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20–21 (D.D.C. 2003) ("By considering documents outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the Court does not convert the motion into one for summary judgment . . . .").

with LOC but "no meaningful effort was made to address the discriminatory policies, practices

and procedures."  Compl. ¶ 4.

**B.  Plaintiffs' Failure to Exhaust Their Administrative Remedies**

LOC maintains that plaintiffs' failure to meaningfully participate in the administrative

process constitutes an abdication of their duty to exhaust their administrative remedies prior to

initiating a civil action.

As mentioned above, the remedial framework erected by Title VII relies heavily on the

administrative component of the process.  As such, 42 U.S.C. § 2000e-16(a), (c), requires that a

plaintiff file their initial charge of discrimination with the employing agency.  *See Loe v. Heckler*,

768 F.2d 409, 417 (D.C. Cir. 1985); *President v. Vance*, 627 F.2d 353, 360 (D.C. Cir. 1980).

The administrative phase of the process is not, however, meant to merely represent a procedural

hurdle that the plaintiff must overcome.  Rather, "it is part and parcel of the Congressional design

to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary

responsibility' for maintaining nondiscrimination in employment."  *Kizas v. Webster*, 707 F.2d

524, 544 (D.C. Cir. 1983) (citations omitted).  "Exhaustion is required in order to give federal

agencies an opportunity to handle matters internally whenever possible and to ensure that the

federal courts are burdened only when reasonably necessary."  *Brown v. Marsh*, 777 F.2d 8, 14

(D.C. Cir. 1985).  Moreover, the exhaustion requirements permit an employer to investigate

claims of discrimination promptly, before evidence becomes stale.  *See Delaware State Coll. v.

Ricks*, 449 U.S. 250, 256–57 (1980).

As part of the administrative process, LOC has developed regulations that require discrimination complainants to undergo counseling before they file a formal complaint. With respect to class claims, Library of Congress Regulation (LCR) 2010-3.2 § 4(A) states:

> A staff member or applicant who wishes to be an agent and who believes he/she has been discriminated against shall complete Form 16-5, <u>Allegations of Discrimination</u> . . . , within 60 workdays of the date of the matter giving rise to the allegation of individual discrimination, or 60 workdays of its effective date, if it is a personnel action, and shall consult with an Equal Employment Opportunity Counselor . . . .

The regulations state further that:

> [T]he Counselor shall: (1) Advise the aggrieved person of the discrimination complaint procedures, of his/her right to representation throughout the precomplaint and complaint processes . . . (2) Make whatever inquiry is believed necessary; (3) Attempt to resolve the discrimination complaint informally through discussion with appropriate official(s); (4) Counsel the aggrieved person concerning the issue(s) involved . . . .

(LCR) 2010-3.2 § 4(B). In this instance, LOC sought to comply with these regulations through the retention of Withers. As discussed *supra*, Withers was retained to conduct counseling on the informal class action complaint that was filed by plaintiffs. Withers Decl. ¶ 1. As part of Withers's assignment, she was instructed by Ricardo Grijalva, head of the LOC's EEO office, and Gilbert Sandate, head of Workforce Diversity, to focus on eliciting from the plaintiffs specific information regarding the alleged discrimination. *Id.* ¶ 2.

Withers describes her July 15, 2004, initial meeting with the class agents—Mills, Barnes, and Ijeomah—and their representative, Howard Cook, as "not successful." *Id.* ¶ 7. According to Withers, the class agents believed that "the informal counseling process was inappropriate for a complaint of this magnitude" and unnecessary. *Id.* ¶¶ 4, 5. Withers asserts that, though she made repeated attempts to initiate a discussion of the class agents' informal complaint, her requests for information were consistently rebuffed. Additionally, Withers states that the class

agents did not believe she was the most appropriate person with whom to discuss their

allegations and instead expressed a preference to speak with Dr. Billington, the Librarian of

Congress.  Withers left this initial meeting unable to obtain any specific dates upon which the

alleged discrimination occurred, the names of any officials—other than Dr. Billington and

Donald Scott, the Assistant Librarian—that engaged in the allegedly discriminatory practices, or

the types of positions held by members of the putative class.  *Id.* ¶¶ 8–11.

Withers met the class agents and Cook for a second time on August 18, 2004.  Withers

submits that, once again, the class agents and Cook were uncooperative and refused to provide

details about the alleged discrimination.  According to Withers, she attempted to discuss

management's stance on the discrimination allegations, as well as the requirements for bringing a

class action claim set forth in Fed. R. Civ. P. 23, but the class agents remained unreceptive to

participating in any discussion.  *Id.* ¶ 14.  Withers also states that the class agents resisted her

attempts to provide them with notification of their right to file a formal complaint.  *Id*.

The other attendees provide a very different account of the counseling sessions, objecting

to Withers's characterization of these meetings.  In their version of events, Withers was

performing a perfunctory investigation and preoccupied with having the class agents sign a

document entitled "Notice of Rights and Responsibilities for Class Agents."  *See* Cook Decl. ¶¶

4–5.  Cook directly contradicts Withers's description of the initial meeting and declares that "Ms.

Mills informed Ms. Withers about specific claims of discrimination that were relevant to her and

that were ongoing, and I told Ms. Withers about claims relevant to the class agent members'

complaint that were ongoing and unresolved."  *Id.* ¶ 6.  Mills also represents to the court that she,

as well as the other class agents, "tried to provide Ms. Withers with precise dates and information

about discrimination that we had personal knowledge of, for example, I told her about

discrimination in the CALM Division and about my prior complaint." Mills Decl. ¶ 12. While

the class agents concede that they were unwilling to sign the document handed to them by

Withers, they do not believe they had any obligation to do so.

Were the court to accept LOC's description of plaintiffs' participation in the

administrative proceedings, the court would be inclined to conclude that plaintiffs have failed to

exhaust their administrative remedies. Exhaustion under Title VII demands a "good faith effort

by the employee to cooperate with the agency and EEOC and to provide all relevant, available

information." *Crawford v. Babbit*, 186 F.3d 1322, 1326 (11th Cir. 1999); *see also Wilson v.

Peña*, 79 F.3d 154, 164–65 (D.C. Cir.1996) ("If a complainant forces an agency to dismiss or

cancel the complaint by failing to provide sufficient information to enable the agency to

investigate the claim, he may not file a judicial suit."); *Briley v. Carlin*, 172 F.3d 567, 571 (8th

Cir. 1999) (a plaintiff has exhausted their administrative remedies when there has been "good

faith participation in the administrative process, which includes making specific charges and

providing information necessary to the investigation."). A plaintiff's refusal to provide an

investigating agency with relevant information related to a claim of discrimination does not

constitute a good-faith effort to exhaust one's administrative remedies. *See Smith v. Koplan*, 362

F. Supp. 2d 266, 268 (D.D.C. 2005) (plaintiff failed to exhaust her administrative remedies when

she "abandoned the administrative process [and] did not comply with the discovery proceedings

before the EEOC administrative judge."); *Artis*, 158 F.3d at 1306–07 (affirming dismissal where

plaintiffs' decision to withhold "information to which plaintiffs alone had access—specific

instances of . . . discriminatory personnel practices that affected the members of the putative

class," prevented the EEO from counseling the class claims)[3]; *cf. Thompson v. Jasas Corp.*, 212

F. Supp. 2d 21, 24 (D.D.C. 2002) (finding a good-faith effort to exhaust administrative remedies

where the plaintiff "participate[d] fully in the EEOC investigation for more than one year" and

"made specific assertions and provided the names of potential witnesses").

However, here—unlike in the many of the cases in which, because of the plaintiff's

unwillingness to participate, a complaint is dismissed for failure to exhaust one's administrative

remedies—there is conflicting evidence that suggests plaintiffs participated, at least to a limited

extent, in the administrative process.  In *Jordan v. United States*, 522 F.2d 1128 (8th Cir. 1975),

for example, the Eighth Circuit affirmed the district court's decision to grant the defendant's

motion to dismiss where the "failure [to exhaust] was not the result of oversight, or confusion,

but of deliberate choice." *Id.* at 1132.  In *Jordan*, the plaintiff admitted that he abandoned the

administrative proceedings because he suspected the agency "had a conflict of interest" and was

"incompetent to conduct any proceedings for examination of [the merits]." *Id.*  Similarly, in

*Jeffers v. Chao*, 2004 WL 3257069 (D.D.C. Sept. 21, 2004), the court dismissed the majority of

---

[3] In *Artis*, the plaintiffs insisted that the adequacy of information they provided
to the agency was demonstrated by the agency's ability to reach the merits of their claim.
As evidence of the agency's ruling on the merits, the plaintiffs cited the agency's decision
to not only deny the plaintiffs' claims for failure to engage in counseling, but also for
failure to meet the threshold typicality and commonality requirements for prosecuting a
class action.  The Court of Appeals rejected this argument finding that "[a] commonsense
reading of the decision reveals that the class complaint was rejected because agency
officials had *no* information on which to base a finding of typicality or commonality." *Id.*
at 1307 (emphasis in original).

Plaintiffs here make a similar argument, Pls.' Opp. at 8–9, 19, and as in *Artis*, the
argument is unpersuasive.  Any LOC ruling on the merits of plaintiffs' complaint was
based on the lack of information provided to the agency.  Even a cursory review of LOC's
September 20, 2004 decision reveals that the primary basis for dismissal was plaintiffs'
perceived rejection of the counseling process.

the plaintiff's claims in light of his "obdurate refusal to cooperate in any way" with the administrative review of his complaint. *Id.* at \*6. In granting the defendant's motion, the court noted that the plaintiff "repeatedly failed to return phone calls from investigators, refused certified letters, and absented himself from interviews." *Id.* at \*4.

In this case, the record does not demonstrate the same degree of reluctance to assist the efforts of the agency counselor. For one, the class agents accepted both of Withers's invitations to meet with her. In addition, the plaintiffs dispute that they were unwilling to provide specific details concerning discrimination, but instead insist that Withers was more concerned with relaying information than receiving information. Moreover, the record includes the names of hundreds of putative class members—provided by the class agents, Mills Decl. ¶ 11 —that could have aided in Withers's investigation.

More importantly, the LOC prematurely cancelled plaintiffs' complaint when it did not afford the class agents an opportunity to remedy whatever defects may have existed in their complaint, as is required by LOC regulations. LOC's September 20, 2004, decision makes clear that plaintiffs' complaint was dismissed for their perceived unwillingness to assist in the administrative counseling. However, the LOC decision does not specify the precise regulatory basis for the dismissal. Arguably, it is either the lack of specificity in the class agents' complaint or their failure to prosecute their claim. In either instance, LOC regulations require that the class agents be given ten-days notice of the deficiencies in their complaint and an opportunity to address those deficiencies. LOC's regulations governing the processing of class complaints mandate that:

>   If an allegation lacks specificity and detail, the Complaints Examiner shall afford the agent 10 workdays to provide specific and detailed information. The Complaints Examiner may recommend that the Assistant Chief reject the complaint if the agent fails to provide such information within the specified time period.

LCR 2010-3.2 § 6(D).

Similarly, LCR 2010-3.2 § 6(G) states that:

>   The Complaints Examiner may recommend that the Assistant Chief cancel a complaint after it has been accepted because of failure of the agent to prosecute the complaint. This action may be taken only after the Complaints Examiner has provided the agent a written request, including notice of proposed cancellation, that he/she provide certain information or otherwise proceed with the complaint, and the agent has failed to satisfy this request within 10 workdays of his/her receipt of the request.

Indeed, LOC does not contest that the class agents were not given any notice of the impending cancellation of their complaint. Rather, LOC seeks to evade the regulation's strictures by suggesting that they do not govern plaintiffs' complaint. LOC argues that, because plaintiffs' complaint was not assigned a "complaints examiner," no notice was required. Pls.' Reply at 11. However, the failure to assign a complaints examiner was itself an unjustified oversight. Under the court's reading of the LOC regulations, a complaint examiner should have been assigned within 10 workdays of the receipt of plaintiffs' formal complaint. *See* LCR 2010-3.2 § 6(A) ("Within 10 workdays of the Assistant Chief's receipt of a complaint, the Assistant Chief shall arrange with the Equal Employment Opportunity Commission for the appointment of a Complaints Examiner."). LOC acknowledges that a formal complaint was filed on August 27, 2004, yet no examiner was appointed prior to LOC's cancellation of the complaint on September 20, 2004. Far from excusing LOC's conduct, the absence of a complaint examiner only reinforces the prematurity of LOC's decision.

11

Having concluded that LOC made numerous errors when processing plaintiffs'

complaint, the court must find that plaintiffs constructively exhausted their administrative

remedies.  Though there is a strong preference that the relevant agency perform the initial

assessment of the merits of a plaintiff's complaint, *see Hill v. Runyon*, 12 F. Supp. 2d 30, 33

(D.D.C.) ("Generally, a federal court should not hear the merits of a discrimination case against a

government agency unless the agency has first ruled upon them."), there is persuasive authority

that suggests Title VII does not provide for a remand from the district court to the agency.  *See*

*Ward v. Sec. of the Army*, 796 F.2d 1369, 1378 (8th Cir. 1986) ("A reading of the regulations

makes obvious the requirement that an employee's complaint be processed promptly.  Negated is

the possibility that a dispute may receive revolving ladder review within the agency or between

the agency and the courts.").  As the court stated in *Woodruff v. Mineta*, "If . . . an agency

wrongfully dismisses a complaint for a purported failure to comply with a provision of the

regulations, the court should not remand the case to the agency but should 'conclude that

administrative remedies are exhausted and go on to try all issues in the case on their merits.'"

215 F. Supp. 2d 135, 138 (D.D.C. 2002) (*quoting Wade*, 796 F.2d at 1378).

### III.  CONCLUSION

For the aforementioned reasons, it is this 16th day of May, 2006, hereby

**ORDERED** that LOC's motion to dismiss [Dkt. # 6] is **DENIED**.


Henry H. Kennedy, Jr.
United States District Judge