UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTINE MILLS, et al.,<br>        Plaintiffs,<br><br>v.<br><br>JAMES BILLINGTON, Librarian,<br>Library of Congress,<br>        Defendant. | Civil Action No. 04-CV-2205 (FJS-AK) |

## MEMORANDUM ORDER

Pending before the Court are the remaining discovery matters in this case. After several hearings, telephone conferences, briefings by the parties, and testimony by the parties' experts, the Court finds that the Plaintiffs have adequately narrowed and explained their discovery requests. Defendant is instructed to provide Plaintiffs with the following information as outlined below. Plaintiffs are permitted to subpoena Avue to access this information.

### Background

Current named plaintiffs in this case include Christine Mills, Runako Balondemu, Geraldine Duncan, Priscilla Ijeomah, Lawrence Perry, William Rowland, David Hubbard, Clifton Knight, Sharon Taylor, and Charles Mwalimu (collectively, "Plaintiffs.") Plaintiffs are minority employees of the Library of Congress who brought suit on behalf of themselves and "as representatives of a class of all minority job applicants and all past, current, and future minority employees of the Library of Congress." 2d Am. Compl. [28] ¶ 1. Plaintiffs allege that James Billington, the Librarian of Congress ("Defendant"), "engaged in an ongoing pattern and practice of discrimination against its minority employees" regarding compensation, promotions, wage classifications, job assignments, recruitment, hostile work environment, and retaliation. *Id.* ¶ 2(a)-(f). Plaintiffs initiated this action in December 2004. Complaint [1]. After numerous

delays, discovery officially closed on September 30, 2009.  Judge Kay's 9/29/2009 Minute Order.

Plaintiffs filed a Motion to Compel [129] on August 28, 2009, seeking interrogatory responses and production of documents, upon which this Court ruled on May 28, 2010.  Order [196].  As the Court instructed, Plaintiffs drafted a letter on June 14, 2010, in an attempt to narrow their requests.  Ex. 1 of Def.'s Mot. for Protective Order ("Pls.' Letter") [207-1].  Defendant argued that the narrowing did not occur, triggering no obligation for him to respond.  *See* Ex. 2 of Def.'s Mot. for Protective Order [207-2] at 1.  Plaintiffs filed a Motion for Clarification of Judge Kay's May 28, 2010, Order [211].

In order to complete the discovery process and clarify what requests still remain unanswered, the Court has recently held several hearings and telephone conferences.  *See* Minute Entries for Telephone Conference 3/15/2013; Motions Hearing 4/16/2013; Discovery Hearing 6/11/2013; Status Hearing 6/24/2013; Telephone Conference 7/15/2013; and Telephone Conference 7/22/2013.  Most helpful of these hearings was the Status Conference on 6/24/2013, during which the Library of Congress brought employee Mr. Emmet Devine, and Plaintiffs' expert, Mr. James Wyatt, participated via telephone.  Hearing 6/24/2013.  Additionally, Magistrate Judge John Facciola, a recognized expert in electronic discovery, attended and participated in the hearing.  Hearing 6/24/2013.

## **Legal Standard**

"Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. § 26(b)(1).  However, Rule 26 allows the court to limit discovery on its own initiative, if it determines that the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. § 26(b)(2)(C)(iii).

Permitting discovery regarding class certification lies within the discretion of the trial court.  *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975).  While discovery is

necessary, the judge must utilize discretion to ensure that class "discovery concerning Rule 23 [class] requirements and…a class certification motion do[] not become a pretext for a partial trial of the merits." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

## **Discussion**

The parties' final discovery dispute centers on Plaintiffs' Document Request 1(*m*)-(*n*), found in Plaintiffs' First Request for Production of Documents Regarding Class Discovery. Ex. 7 of Pls.' Mot. to Compel ("Pls.' Doc. Req.") [129-9] at 5-6. In Document Request 1(*m*)-(*n*), Plaintiffs requested "Electronic personnel data and data keys showing, for each person you have employed in a full time, permanent position since January 1, 1999:…m) employee applications (postings) for promotional or transfer positions; and n) records of consideration for any postings." *Id.* After the Court instructed the Plaintiff to narrow their request, Order [196] at 5-6, the Plaintiffs' narrowed discovery request sought the following:

> Requests for production 1(m), 1(n), 7 and 8
> 1. A data table showing all posted vacancies for all positions for which a vacancy was announced during the time from January 1, 2003 to the present in full time, general service positions which shows the following data for each vacancy:
>     a) The title of the position(s) posted
>     b) Job Series
>     c) Grade (s)
>     d) The date range when applications were accepted
>     e) The ID number for the posting/selection event
>     f) The name(s) of the person(s) selected (if any) with sufficient information to identify the person and his/her race in the job actions data previously produced;
>     g) Date of job action record(s) corresponding to the selection.
> 2. A data table showing all individuals appearing on certified applicant lists for vacancies listed in #1 and the following information:
>     a) Name and unique identifier (SSN/4) for the person
>     b) Posting ID number(s) for which the individual was a certified applicant
>     c) For each posting, whether the individual made the "initial" and "final" referral lists. Pls.' Letter [207-1] at 2.

Additionally, the Plaintiffs narrowed their request to include six jobs series: Series 1411-Library Technician; Series 1410-Librarian; Series 1210/1211-Copyright; General Administrative; Information Technology-Series 2210; and Technical Information Specialist-Series 1412. *Id.* at 3-4. They also narrowed the dates of the request to be between January 1, 2003, to the date of the letter, June 14, 2010. *Id.* at 2.

-3-

In its Memorandum Order, the Court found that Plaintiffs failed to narrow their discovery request given that the June 14, 2010, Letter sought information for every applicant rather than all current employees, added a request for a "unique identifier (SSN/4)," and appeared to be seeking applicant flow data. Mem. Order [238] at 4-6. Perhaps more important but not apparent to the Court until technology experts became involved, Plaintiffs requested Defendants to produce the data in a new format different from the way it initially existed. *Compare* Pls.' Doc. Req. [129-9] at 5 (seeking "[e]lectronic personnel data and data keys") *with* Pls.' Letter [207-1] at 2 (requesting "a data table showing…the following data for each vacancy"). While the Federal Rules of Civil Procedure explicitly state that parties must "produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request," this does not impose a requirement on parties to format data in the manner in which opposing counsel prefers. Fed. R. Civ. P. 34(b)(2)(E)(i).

Through the ongoing discovery hearings and telephone conferences and with the help of technology and human resources experts, it has become clear to the Court that the Plaintiffs in fact seek the following: "employee applications" consisting of 1) the position name, 2) series and grade, 3) posting number, 4) race of the applicants, and 5) a unique identifier (such as a SSN/4); and "records of consideration" consisting of 1) those applicants on the "initial list," 2) those applicants on the "final list," 3) race of the applicants, and 4) a unique identifier (such as a SSN/4). Plaintiffs appear willing to accept this information in whatever electronic format possible, provided that it is a database capable of manipulation and analysis. While this request was not explicitly clear from the Plaintiffs' initial request [129-9] nor their narrowing Letter [207-1], with the help of technology experts from both parties and Judge Facciola, it presents a reasonable discovery request that does in fact narrow the scope of the initial request and is critically relevant to an alleged discrimination claim.

The Defendant has consistently maintained that he does not understand the Plaintiffs' attempts at narrowing their request and lacked an expert to help clarify the requests. *See* Discovery Hr'g Tr. 37:16-22 June 11, 2013 [245]. Subsequently, Library of Congress Employee Mr. Emmet Devine participated in the June 24, 2013, Discovery Status Hearing and was able to understand the Plaintiffs' request and speak to the Library's ability to provide such information,

including the ability to reconstruct the electronic information that was contained in the Avue[1] database. *See* Discovery Hr'g Tr. 8:7-11 June 24, 2013 [247]. Additionally, the Defendant argued that Plaintiffs continued to seek what has been identified in this litigation as "applicant flow data," Def. Supp. Br. [249]. As the Court understood Plaintiffs' definition, applicant flow data "examin[es] differences in selection rates among different groups (primarily by race) at different stages of the promotion or hiring process for a particular position." Order [196] at 14. The Court has previously ruled that the Plaintiffs never requested applicant flow data in their initial request. Order [196] at 14-15, Order [238] at 5-6.

Lastly, during the April 16, 2013, Motions Hearing, the Defendant first represented that it no longer contracted with Avue and that almost three full years ago the Library migrated to the Monster[2] system without retaining electronic versions of the database. Mot. Hr'g Tr.51:8-54:15 April 16, 2013 [239]. On December 1, 2009, Plaintiffs made a Motion to Direct the Defendant to Preserve Data and Documents [144] as to the relevant data in the Avue system. This Court denied the Motion, both because Plaintiffs failed to confer with opposing counsel and because "Defendant states that it is already maintaining and preserving the documents in question dating back to 2003 that are maintained by both AVUE and the Library of Congress." Mem. Order [154] at 4.

Given that the electronic discovery issues in this case have been unnecessarily complicated, the Plaintiffs identified what they sought but failed to do so with precision, and the Defendant expressed an inability to understand Plaintiffs' request and failed to inform the Court or the Plaintiffs when the data was no longer preserved in its possession, the Court will grant Plaintiffs' request to subpoena Avue for the requested data. While the Plaintiffs' requests have been far from clear, the Court believes that this lack of clarity is due in large part to the nuanced

---

[1] As Defendant stated, "AVUE Digital Services is a third-party vendor that provided the Library a service from 2001 to 2010 to facilitate the Library's implementation of its merit selection and promotion plan." Def.'s Notice of Clarification [241] at 2 n.1. Avue provides a subscription service, known as "Software as a Service (SaaS)." Def.'s Resp. to the Court's Order Dated June 19, 2013 [243] at 3. According to the Avue Master Subscription Agreement, the Avue system "provide[s] all the hardware, software, content, and support required through the subscription period." *Id.* at 4. Avue provides "Applicant Tracking Systems, offering automated solutions for the creation of vacancy announcements, collecting and rating application materials and generating lists of applicants." *Id.*

[2] Monster Government Solutions ("Monster"), the successor to Avue and current program used by the Library of Congress, is a vacancy recruitment system similar to Avue. Def.'s Resp. to the Court's Order Dates June 19, 2013 [243] at 3. Monster is also a SaaS program where the Library of Congress contracts with an outside vendor for services. *Id.* Monster, like Avue, also provides "Applicant Tracking Systems, offering automated solutions for the creation for vacancy announcements, collecting and rating application materials and generating lists of applicants." *Id.* at 4.

technological questions rather than a lack of good faith on the Plaintiffs' part to attempt to comply with the previous Court orders. Additionally, the Court finds that this information is not only relevant but in fact may be critical to the development of the Plaintiffs' discrimination claims. Notwithstanding the Court's previous rulings about applicant flow data and the possibility of categorizing this information as applicant flow data, the Court finds that the majority of the miscommunication and confusion on the part of the Plaintiffs, Defendant, and the Court arose from the technological facts in the case. Lastly, the Defendant previously stated that it would maintain the Avue data when the Library of Congress had in fact changed the service provider and no longer had electronic access to the Avue records. This gives the Court pause because paper records are not equivalent to electronic records and the Court denied the Plaintiffs' Motion about data preservation based, at least in part, on the representation that Defendant was already preserving the identified data. In consideration of all of these facts and weighing the equity of the circumstances, the Court finds that the Plaintiffs are entitled to the following discovery from the Defendant, obtained from Avue, in response to Document Request 1(*m*)-(*n*).

Plaintiffs are permitted to subpoena the following information from Avue: "employee applications" consisting of 1) the position name, 2) series and grade, 3) posting number, 4) race of the applicants, and 5) a unique identifier (such as a SSN/4); and "records of consideration" consisting of 1) those applicants on the "initial list," 2) those applicants on the "final list," 3) race of the applicants, and 4) a unique identifier (such as a SSN/4). Plaintiff may only request this information for the six jobs series that they identified: Series 1411-Library Technician; Series 1410-Librarian; Series 1210/1211-Copyright; General Administrative; Information Technology-Series 2210; and Technical Information Specialist-Series 1412, for the date range of January 1, 2003, to October 2010.[3]

Avue previously stated that it would not provide a cost estimate of this information prior to an official subpoena request. Ex. 2 of Pls.' Supp. for Phone Hearing of July 23, 2013 [248] at 1. After the Plaintiffs receive a cost estimate from Avue, they should submit a statement to the Court and the Defendant explaining the predicted cost and burden. At that time, the Court may hold a hearing if it necessary to determine where the financial burden shall lie.

---

[3] The Court is well aware that Plaintiffs' request only extended to June 14, 2010. *See* Pls.' Letter [201-1]. However, given the inordinate amount of confusion in this case surrounding data discovery, the Court finds it prudent to make the request inclusive to the end of the Library of Congress's contract with Avue.

**Conclusion**

The Court orders that discovery may be re-opened for the very limited purpose of permitting Plaintiffs to subpoena Avue for information collected on behalf of the Library of Congress. Plaintiffs are permitted to subpoena the following information from Avue:

1) the position name,

2) series and grade,

3) posting number,

4) race of the applicants,

5) a unique identifier (such as a SSN/4),

6) those applicants on the "initial list," and

7) those applicants on the "final list."

This information may be sought for the six jobs series that Plaintiffs previously identified: Series 1411-Library Technician; Series 1410-Librarian; Series 1210/1211-Copyright; General Administrative; Information Technology-Series 2210; and Technical Information Specialist-Series 1412, for the date range of January 1, 2003, to October 2010. When the Plaintiffs receive a cost estimate from Avue to access the information, they shall submit a statement to the Court and the Defendant explaining the predicted cost and burden. If Defendant finds the Avue data to be incomplete or inaccurate, he is obligated to update this information based on available Library of Congress records.

This Order will be stayed for fourteen (14) days in order to permit an appeal of the Order to U.S. District Court Judge Frederick Scullin as the trial judge. If no appeal is taken within fourteen days of this Order, the Order is no longer stayed and Plaintiffs should proceed with the subpoena.

**IT IS SO ORDERED.**

DATE:__8/21/2013__               _____/s/_____
                                 ALAN KAY
                                 UNITED STATES MAGISTRATE JUDGE