**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

Christine Mills, et al.,                    )
                                            )
            Plaintiffs                      )
                                            )
v.                                          )
                                            )  Civil Action No. 04-2205 (FJS/AK)
James Billington, Librarian,                )
Library of Congress,                        )
                                            )
            Defendant.                       )
_____   )

**DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS PLAINTIFFS' COMPLAINT,
OR ALTERNATIVELY, FOR SUMMRY JUDGMENT**

Defendant respectfully submits this opposition to Plaintiffs' motion for class certification.

In support of their motion, Plaintiffs (African-American employees of the Library of Congress)

summarily state that they all suffered the same injury, i.e., denial and/or delay in promotions and

assignments, and were harmed in the same manner.  They generally state that they were subject

to the same plans and procedures set in place by the Library of Congress. Critically, however,

Plaintiffs fail to identify or describe how these plans and procedures were used against them by

the Library in a manner which allegedly resulted in non-promotion  (or slower rate of promotion)

and denial of assignments (or delayed provision of assignments) for African-Americans, like

Plaintiffs, as opposed to  their white counterparts.  R. 264, Pls.' Mem. Support Mot. Class Cert.,

p. 5.  Besides their conclusory, unsupported assertions, Plaintiffs have not brought to the Court's

attention any evidence supporting their request for class certification.[1]  For this reason, and

_____

[1] The Court has afforded Plaintiffs the opportunity to take discovery, specifically, on six
(cont'd on the following page)

others as further explained below, Plaintiffs' motion for class certification should be denied.

Additionally, herein, Defendant moves to dismiss Plaintiffs' complaint in its entirety, or

alternatively, for summary judgment.

I.    **BACKGROUND**

A.    ***Cook v. Billington*, Civil Action No. 82-0400(GK)**

This case raises similar claims to those presented in *Cook v. Billington*, Civil Action No.

82-0400(GK).  In *Cook*, the plaintiffs alleged that "the Library engaged in racially discriminatory

employment practices, including the use of illegal non-competitive appointments to exclude

African-Americans from advancement."  *Cook v. Billington*, No.Civ.A. 82-0400(GK), 2003 WL

24868169, *1 (D.D.C. Sept. 8, 2003).  In the *Cook* complaint, Mr. Howard Cook, a class agent,

identified multiple positions at the Library for which he had applied and had been rejected.  *Cook*

*v. Billington*, Civil Action No. 82-0400(Compl., p. 24)(attached hereto as Ex. 1).

In September 1995, the *Cook* parties entered into a Settlement Agreement which included

both monetary relief ($8.5 million) and injunctive relief.  *Cook v. Billington*,  2003 WL

24868169, *1; *see also* Ex. 2, Settlement Agreement.  The terms of the agreement "constitute[d]

full and complete satisfaction of all claims of Class Members against the Library concerning

racial discrimination in violation of Title VII. . ., resulting in non-selection, either competitively

or non-competitively, in or into Professional and Administrative positions within the Library that

[arose] out of events occurring up to final District Court approval of the Agreement." *Id.*, ¶ 31.

Further, upon final Court approval of the Agreement, "the class as a whole and each class

member [were] bound by the doctrines of res judicata and collateral estoppel with respect to all

---

job series used by the Library.  *See* R. 256, Order (Nov. 14, 2013).  However, Plaintiffs, in their
memorandum in support of their Motion for Class Certification, state that discovery is
unnecessary to support consideration of their motion.  R. 264, Pls.' Mem. Support Mot. Class
Cert., pp. 7-8.

such claims." *Id.* The Settlement Agreement was granted final approval on September 22, 1995, and became fully effective on December 1, 1996. *Cook v. Billington*, 2003 WL 24868169, *1. The Agreement included relief in the form of promotions and, as indicated above, monetary awards totaling $8.5 million. *Id.* The Agreement was set to expire on December 1, 2000, but two years prior to the Agreement's expiration, in 1998, the *Cook* plaintiffs alleged non-compliance with the Settlement Agreement. *Id.*

In January 2001, in lieu of ruling on the *Cook* plaintiffs' 1998 Motion regarding the Library's alleged non-compliance, the Court approved the parties' jointly proposed resolution "and ordered the Library to adopt new statistical analysis and selection process modifications." *Id.* at 3; *see also Cook v. Billington*, Civil Action No. 82-0400(GK)(Docket Entry No. 836, Order, attached hereto as Ex. 3). Pursuant to the Court's Order, the *Cook* parties joint resolution (specifically, their Joint Report) became part of the record in the case and defined the obligation of the Library under the Settlement Agreement. *Id.*

As to the selection process modification, the Library implemented a three-stage competitive selection procedure which included (1) ranking applicants, (2) interviewing referred applicants, and (3) selecting an applicant from those found to be fully acceptable for the position. *Cook v. Billington*, 2003 WL 24868169, *2. The Court extended its oversight period of the selection process to December 1, 2002. *Id.* at *7. Shortly before the expiration of the Court's oversight period, in November 2002, the *Cook* plaintiffs moved to extend the oversight period and for the appointment of a receiver. *Cook v. Billington*, Civil Action No. 82-0400(GK)(R. 861). On September 8, 2003, the Court denied the plaintiffs' motion to extend the oversight period. *Cook v. Billington*, Civil Action No. 82-0400(GK)(Docket Entry No. 879).

Notably, nine of the ten plaintiffs in this case were class members of the *Cook* class

action, and all nine received monetary relief in addition to the non-pecuniary relief provided to

the class as a whole.  Specifically, Mills received $1,832.60, Balondemu received $1,596.98,

Duncan received $5,513.32, Hubbard received $2,613.94, Ijeomah received $1,007.93, Mwalimu

received $8,277, Knight received $6,532.58, Perry received $5,412. 27, and Rowland received

$7,370.92.  Ex. 4, Claimant Review Status Report (Excerpts).  Geraldine Duncan also received a

promotion as part of the *Cook* settlement.  *Id.*  Sharon Taylor, the remaining plaintiff in this case,

did not receive any relief since she was not employed by the Library at the time of the settlement

in *Cook* .

### B.    The Current Lawsuit

On or around May 28, 2004, just eight months after the Court denied the *Cook*

plaintiffs' motion to extend the oversight period, Plaintiffs, Christine Mills, Priscilla Ijeomah and

Amy Barnes, filed an administrative complaint with the Library of Congress, pursuant to Library

of Congress Regulation (LCR) 2010-3.1.  R. 1-1, Letter from Christine M. Mills, Priscilla C.

Ijeomah, and Amy D. Barnes to Jean Y. Myers, May 28, 2004 ("Letter to Myers").  The

administrative complaint alleged that the Library discriminated against African-American and

minority employees on the basis of color, race, national origin and sex.  *Id.* at 1.  The complaint

included a vast range of claims reaching many aspects of employment including, but not limited

to, promotion, job classification, training, and discipline.  R. 1-1, Letter to Myers.

On December 20, 2004, Plaintiffs (Mills, Barnes, Ijeomah, Runako Balondemu, Arnice

Cook, Robert Cooper, Michael Durrah II, Geraldine Duncan, Lawrence Perry, William Rowland,

and Mark A. Wilson) filed this suit.  On June 6, 2005, Defendant moved to dismiss this suit for

failure to exhaust administrative remedies based on Plaintiffs' failure to cooperate in good faith

with the Library's administrative EEO process.  R. 6, Def.'s Mot. Dismiss.  On August 1, 2005,

Plaintiffs opposed Defendant's motion, and on May 16, 2006, this Court denied Defendant's

Motion to Dismiss.  The Court explained that there was conflicting evidence as to Plaintiffs'

degree of cooperation in the administrative process.  R. 15, Mem. Op. and Order, p. 9.

On December 11, 2006, Plaintiffs, now joined by Clifton Knight, filed their First

Amended Complaint, and on April 2, 2007, they filed their Second Amended Complaint.  R. 28.

They alleged discrimination on the basis of compensation, promotions, wage classifications and

job assignments, recruitment, harassment/hostile work environment, and retaliation.  R. 28,

Second Am. Class Action Compl. ¶ 2.  They claim that the questions of law common to the

Class include without limitation whether (1) the Library's operating practices and procedures

discriminate against minority employees, (2) the Library's policies granting discretionary

authority to its managers has a negative impact on class members, (3) the Library has a policy or

practice of paying minority employees less than "Caucasian" employees for the same work, (4)

the Library has a policy or practice of grooming "Caucasian" employees for advancement but

denying minorities similar opportunities, (5) the Library has a policy or practice of assigning

lesser job classifications and wage grades to minority employees, (6) the Library has a policy or

practice of giving less desirable work assignments to minority employees, (7) minority

employees are subject to a pattern of racial harassment, (8) the Library's conduct constitutes a

hostile work environment,  and (9) the Library has a policy or practice of retaliating against

Class members who object to the Library's unlawful employment practices.[2]  *Id.* ¶ 11.

---

[2]At a September 17, 2009 Meet and Confer conference which was transcribed, Plaintiffs'
counsel averred that his clients were no longer pursuing harassment, hostile work environment,
and retaliation claims.  R. 164-1, Meet and Confer Transcr., 5:7 to 6:5; 47:9 to 47:16; and 49:21
to 50:2 (Sept. 17, 2009).  Further, in the memorandum in support of their class certification,

(cont'd on the following page)

On April 9, 2010, Defendant moved to dismiss this suit or alternatively for summary judgment.  Defendant argued that Plaintiffs failed to file a timely actionable claim (i.e., Plaintiffs failed to exhaust their administrative remedies) and that Plaintiffs lacked standing.  Defendant additionally argued that Plaintiffs' claim based on the Library's promotion and recruitment procedures were barred by res judicata or/and collateral estoppel and that Plaintiffs failed to state a cognizable claim under Title VII. As to the latter, Defendant argued that Plaintiffs failed to establish a *prima facie* case of discrimination on their promotion and failure to hire claims and failed to identify any cognizable adverse action regarding their claims related to discipline, training, telework and performance evaluations.   Defendant also argued that Plaintiffs' non-promotion claim should be dismissed because of the Library's legitimate, non-discriminatory reason for its promotion and selection procedures – namely, that the Library was bound to use those procedures as established and agreed upon by the parties pursuant to Court Order in the *Cook* case.  *See Cook v. Billington*, Civil Action No. 82-0400(GK)(Docket Entry No. 836, attached hereto as Ex. 3).  Finally, Defendant argued that Plaintiffs failed to satisfy the prerequisites for a class action under Rule 23 of the Federal Rules of Civil Procedure.  On May 6, 2010, Plaintiffs filed their opposition to Defendant's motion, and on May 26, 2010, Defendant filed his reply.

On March 12, 2013, this Court denied Defendant's motion insofar as it was based on Plaintiffs' failure to exhaust their administrative remedies and *res judicata*.  R. 233, Order at 2 (March 12, 2013).  The Court denied Defendant's motion without prejudice with leave to renew

---

Plaintiffs state that the common question for judicial review is whether the Library denied and/or delayed promotions and assignments to African-American employees.  R. 264, Pls.' Mem. Support Mot. Class Certification, at 4 and 5.  Accordingly, Plaintiffs' claims based on harassment, hostile work environment, and retaliation are not addressed herein.  If, however, Plaintiffs do in fact pursue these claims, Defendant anticipates supplementing this motion to address the claims.

the motion based on the doctrine of collateral estoppel and for failure to state a claim.  *Id.*  The

Court expressly stated that Defendant could renew its motion to dismiss or for summary

judgment on these grounds in opposition to Plaintiffs' motion for class certification.  *Id.*  In its

March 12, 2013 Order, the Court referred pending discovery matters to Magistrate Judge Alan

Kay for resolution and provided a schedule for briefing the motion for class certification based

on when the pending discovery matters were resolved.  *Id.*  at 3.  Before complete resolution of

pending discovery issues, Plaintiffs filed their motion for class certification expressly stating that

discovery is unnecessary for the purpose of the Court's consideration of class certification.  R.

264, Pls.' Mem. Support Mot. Class Cert., pp. 7-8.

## II.     ARGUMENT

### A.     Plaintiffs Fail to Satisfy the Prerequisites for a Class Action Under Fed. R. Civ. P. 23.

"The class action is 'an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541,

2550 (2011), quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979).  Individual litigants

seeking to maintain a class action must meet the prerequisites of Fed. R. Civ. P. 23(a), which

provides:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all only if (1) the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact common to the class, (3) the
> claims or defenses of the representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties will fairly and adequately
> protect the interests of the class.

Fed. R. Civ. P. 23(a).

The Supreme Court has stated that this Rule "does not set forth a mere pleading

standard."  *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551.   "[T]he mere claim by employees of the

same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once." *Id*. "A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]-that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*.; *see also In re Photochromic Lens Antitrust Litigation*, 2014 WL 1338605, *5 (M.D.Fla. April 3, 2014)("Evidentiary proof is required to show compliance with Rule 23")(citing *Comcast Corporation v. Behrend*, 133 S.Ct. 1426, 1432 (2013), quoting *Wal-Mart Stores, Inc*., 131 S.Ct. at 2551-52).   Additionally, the failure to satisfy any one of the Rule 23(a) requirements precludes class certification. *See General Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982).

In addition to meeting all of the Rule 23(a) prerequisites, a party seeking class certification also must demonstrate that the proposed class action satisfies at least <u>one</u> of the criteria set forth in Fed. R. Civ. P. 23(b).  Certification under Rule 23(b) is appropriate only where (1) the prosecution of separate actions would create a risk of inconsistent adjudications and incompatible standards of conduct for the defendant, or a risk of individual adjudications that as a practical matter would be dispositive of the interests of other class members; (2) the defendant "has acted or refused to act on grounds that apply generally to the class" and injunctive or declaratory relief is appropriate for the class as a whole; or (3) common issues predominate and a class action is the superior means to handle the litigation.

### 1.    Fed. R. Civ. P. 23(a)

#### a.    Numerosity

Rule 23(a)(2) requires that the class must be so numerous that joinder of all members individually is "impracticable."  The plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. *General Tel. Co. of Northwest,*

*Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980).   Plaintiffs here offer little to fulfill the numerosity

requirement.  Plaintiffs aver only that there are now 10 plaintiffs in *Mills* and state that joinder is

impracticable.  R. 264, Pls.' Mem. Support Mot. Class Cert., pp. 7-8.  Such an assertion with

nothing more is insufficient to evidence numerosity for the purpose of maintaining a class action.

*See, e.g., Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989)( a plaintiff cannot "rely

on conclusory allegations that joinder is impracticable or on speculation as to the size of the class

in order to prove numerosity.").   Given the deficiency of their proof as to numerosity, Plaintiffs'

motion for class certification should be denied.

        **b.**       **Commonality**

              **i.**       **The Direct Applicability of *Wal-Mart Stores, Inc. v. Dukes***

In their effort to show  commonality, Plaintiffs claim that they have "indicated" a

common injury by a common employer, worked at the Library of Congress in the same location

in Washington, D.C., and were governed by the same plan and procedures set in place by the

Library of Congress.  R. 264, Pls.' Mem. Support Mot. Class Cert., p. 4.  However, in addition to

failing to identify any allegedly discriminatory plans and procedures, they incorrectly aver that,

based on the above-noted points, their complaint does not contain the fatal flaw identified  in the

Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*.  *Id.*  Contrary to Plaintiffs'

argument, applying *Wal-Mart v. Dukes* to this lawsuit clearly evidences the propriety of denying

Plaintiffs' motion for class certification.

In *Wal-Mart Stores*, the plaintiff class alleged that the discretion local supervisors

exercised over pay and promotion decisions violated Title VII by discriminating against a

particular class of employees.  *Wal-Mart*, 131 S. Ct. at 2546.  In addition, the *Wal-Mart* plaintiffs

sought certification of a broad class consisting of "'[a]ll women employed at any Wal-Mart

domestic retail store at any time since December 26, 1998, who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices,'" *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2549 (quoting Pl.'s Motion for Class Certification in case No. 3:01-cv-02252-CRB (N.D. Cal.), Doc. 99, p.37). For its part, the defendant claimed that the plaintiff class did not satisfy Rule 23(a)'s prerequisites of commonality, typicality, and adequate representation. *Wal-Mart*, 131 S. Ct. at 2549.

The basic facts and claims in *Wal-Mart* strongly resemble those in this suit. Specifically, Plaintiffs in their Second Amended Complaint aver that

> The racial disparities in compensation, promotions, job classifications and job assignments result from, *inter alia*, Defendant's Agency-wide policy of *delegating discretionary authority* to managers and supervisors to make these employment decisions. Defendant's managers and supervisors *exercise their subjective discretion in a racially discriminatory manner that has a disparate impact on minority employees*. Defendant is aware of this practice as it has existed over the years but has failed to remedy its effects. Further, management has not put in place meaningful oversight procedures to ensure that instances of racial discrimination are appropriately addressed.

R. 28, Pls.' Second Am. Class Action Compl. ¶ 3 (emphasis added).

This allegation parallels the *Wal-Mart* respondents' claim that "local managers' discretion over pay and promotions is exercised disproportionately in favor of men, leading to an unlawful disparate impact on female employees. And . . . because Wal-Mart is aware of this effect, its refusal to cabin its managers' authority amounts to disparate treatment." *Wal-Mart, Inc.*, 131 S. Ct. at 2548 (internal citations omitted).

The Supreme Court addressed this argument directly in its decision. Consistent with prior case law, it ruled that Wal-Mart's "policy" allowing managerial discretion over employment matters was, without strong statistical evidence of a "common mode of exercising discretion that pervades the entire company," *id.* at 2554, insufficient to show a specific discriminatory employment practice uniting the plaintiffs' disparate claims, *id.* at 2555. The

*Wal-Mart* respondents had not shown that they had "suffered the same injury" as required by the analysis set out in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982). *Id.* at 2557. Absent "'significant proof' that Wal-Mart 'operated under a general policy of discrimination,'" *id.* at 2553, the plaintiffs had not established the existence of any common question. The Supreme Court therefore held that the *Wal-Mart* respondents had failed to meet Rule 23(a)(2)'s prerequisite of commonality. *Id.* at 2557. This Court should reach the same conclusion here.

Plaintiffs' claims in this case suffer from several of the other infirmities the Supreme Court noted in *Wal-Mart*. In particular, the Supreme Court found insufficient the statistical and anecdotal evidence that the *Wal-Mart* respondents adduced in an attempt to show commonality for Rule 23(a)(2) purposes. *Id.* at 2549, 2556. With respect to the statistical evidence, the Supreme Court reasoned that regional and national statistical disparities "[could] not by [them]sel[ves] establish the uniform, store-by-store disparity upon which the plaintiffs' theory of commonality depends." *Id.* at 2555.

The Plaintiffs here have similarly presented only broad statements about Library-wide statistical trends, such as "Minority employees are promoted at a significantly lower rate than Caucasian employees." R. 28, Pls.' Second Am. Class Action Compl. ¶ 2c, *see also* ¶¶ 2a-b. Further, like their *Wal-Mart* counterparts, Plaintiffs have pointed to no additional evidence showing a "specific employment practice," *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2555, to which all class members have been subject. In fact, the named Plaintiffs fail to show that they have been subject to any adverse employment practice at all. *See generally* Defendant's Statement of Material Facts Not in Genuine Dispute.

The Supreme Court also found the anecdotal evidence the respondents presented in *Wal-Mart* "too weak to raise any inference that all the individual, discretionary personnel decisions are discriminatory." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2556. The number of affidavits filed (120, for a plaintiff class numbering 1.5 million) recounting experiences of discrimination was so miniscule that, "[e]ven if every single one of the[] accounts is true, that would not demonstrate that the entire company 'operate[s] under a general policy of discrimination.'" *Id.* (internal citations omitted). The anecdotal evidence the Plaintiffs in this case have offered in support of their claims about the Library's allegedly discriminatory policies and practices is substantially and substantively even less persuasive than what the *Wal-Mart* respondents provided. *See generally* Defendant's Statement of Material Facts Not in Genuine Dispute. As Defendant has described, none of the Plaintiffs have identified, in either the Complaint or in discovery responses, specific adverse actions taken against them occurring within 60 days of the filing of the administrative complaint. *See* Defendant's Statement of Material Facts Not in Genuine Dispute.

In light of the similarities between the facts and arguments presented in *Wal-Mart* and in this case, Defendant suggests that the Supreme Court's recent decision should augur in favor of denying Plaintiffs' motion for class certification.

ii.     **Plaintiffs' Failure to Demonstrate Commonality Pursuant to *General Telephone Co. of Southwest v. Falcon***

As indicated above, the Supreme Court's decision in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982), "describes how the commonality issue must be approached." *Wal-Mart Stores, Inc.,* 131 S.Ct. at 2552-2553. In *Falcon*, "an employee who claimed that he was deliberately denied a promotion on account of race obtained certification of

a class comprising all employees wrongfully denied promotions and all applicants wrongfully denied jobs." *Id.* at 2553. The Supreme Court rejected the class for lack of commonality and typicality. *Id.* The Supreme Court explained that, "conceptually," the gap was too wide between the individual claim of discrimination based on an "unsupported allegation that the company ha[d] a discriminatory policy of discrimination" and the existence of a class of persons suffering the same injury. *Wal-Mart Stores, Inc.,* 131 S.Ct. at 2552-2553, quoting *Falcon*, 457 U.S. at 157-158. *Falcon* suggests two ways to bridge the gap – first, by showing that the employer used biased testing procedures against a class of applicants, and secondly, by presenting ***"[s]ignificant proof*** that an employer operated under a general policy of discrimination. . ." *Id.* (emphasis added).

The first way to show commonality is not applicable to this case. Plaintiffs in this matter have not pled use of any biased testing procedure by the Library of Congress. Relevant here and as noted above, Plaintiffs in this matter have also presented no evidence whatsoever of a policy or practice of discrimination on the part of the Library, let alone presented the ***significant proof*** required by *Falcon*. Similar to the defendant in *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2553, the Library of Congress has a policy that forbids discrimination in employment. The Library's policy specifically forbids discrimination in employment based on "political, religious or labor organization affiliation or non-affiliation, marital status, ***race***, color, gender, sexual orientation, national origin, non-disqualifying physical disability, age, or other non-merit factor." *See, e.g*., Library of Congress Merit Selection Plan, at 4 (June 10, 2005; rev. July 1, 2013)(emphasis added).[3] As noted above, in support of class certification, Plaintiffs simply state that they "(a) worked at the Library of Congress in the same location in Washington, D.C.; and (b) were

---

[3] http://loc.gov/hr/employment/msp010909.pdf.

governed by the same plan and procedures set in place by the Library of Congress." R. 264, Pls.'
Mem. Support Mot. Class Cert., pp. 7-8. However, absent identification of a specific
discriminatory policy or practice, and a description of how such a policy or practice adversely
impacted them (and is common to all class members), Plaintiffs have merely alleged vague,
unsupported claims of individual discrimination without any tangible evidence as to how this
discrimination is commonly applied by the Library to the rest of the class members. Therefore,
Plaintiffs' motion for class certification must fail. *See, e.g., Taylor v. Hilti, Inc*., 703 F.3d 1206,
1229 (10th Cir. 2013)(plaintiffs failed to show "commonality" when they did not demonstrate
that facts and circumstances surrounding employer's promotion decisions were common to the
class.).[4]

### c.    Typicality

When examining typicality, "the court must consider whether [the plaintiff] suffered
injury from a specific discriminatory. . .practice of the employer in the same manner that the
members of the proposed class did, and whether [the plaintiffs] and the class members were
injured in the same fashion by a. . .policy of employment discrimination." *Wagner v. Taylor*,
836 F.2d 578, 591 (D.C. Cir. 1987)). Plaintiffs, as a threshold matter, fail to describe any policy
or practice that has been used by the Library in a discriminatory manner, nor any specific
adverse action that they suffered as a result of use of this policy or practice. Accordingly,
Plaintiffs fail to establish that their claims are "typical" for the purpose of supporting class
certification.

---

[4] Plaintiffs also argue that Defendant's "failure to maintain control of. . .records" provides
an inference that Defendant's practices were unlawful. R. 264, Pls.' Mem. Support Mot. Class
Cert., p. 5. Plaintiffs provide no evidence whatsoever to support this allegation, and critically,
expressly state that they do not require the class discovery that the Court afforded them for the
specific purpose of establishing evidentiary support for their request for class certification. *Id*. at
7-8.

### d.    Adequacy of Representation

Given Plaintiffs' failure to meet the commonality and typicality requirements of Fed. R.

Civ. P. 23(a), they cannot establish that they will fairly and adequately represent a class.  A

recent decision from this Court illustrates this point.  In *Brewer v. Holder*, this Court  held that a

plaintiff's conclusory claim that she was not afforded the same training opportunities as her

white counterparts was not actionable.  *Brewer v. Holder*, Civil Action No. 08-1747(BJR), ---

F.Supp.2d ----, 2013 WL 5397841, *7 (D.D.C. Sept. 27, 2013).  In dismissing the claim, the

Court relied on *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) in which the Supreme Court stated

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to support a claim.   In *Brewer*, the Court noted that the plaintiff

failed to "identify any specific training opportunity that [was] denied to her, even though that

information would be readily available to her through her own memory and experience."

*Brewer*, 2013 WL 5397841, *7.  The Court, in *Brewer*, added that because the plaintiff's training

claims were not "viable as a matter of law," the plaintiff was not "an adequate representative of a

class of individuals who purport to have suffered such an injury."  *Id*. at *8.  The same analysis

readily applies here – Plaintiffs present only vague and generalized claims against the Library

without any specific identification of instances of alleged discrimination to which they were

subject.  Hence, Plaintiffs' claims are not viable as a matter of law, and thus, Plaintiffs are not

adequate class representatives.

### 2.    Fed. R. Civ. P. 23(b)

Plaintiffs are seeking relief under Fed. R. Civ. P. 23(b)(2).  Pls.' Mem. Support of Mot.

Class Cert., at 6.  However, because Plaintiffs do not satisfy the requirements of Rule 23(a), the

Court need not actually consider whether Plaintiffs have satisfied Rule 23(b).  Should the Court

nevertheless undertake this task, it will find additional reasons to deny class certification.  Under Rule 23(b)(2), a plaintiff must show that a defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2). As discussed above, Plaintiffs failed to identify any discriminatory policy or practice that is generally applicable to the class that meets the standard as explained in *Wal-Mart Stores, Inc. v. Dukes* and *General Telephone Co. of Southwest v. Falcon*, and therefore, their request for class certification should be denied.

Further, Plaintiffs seek monetary relief (i.e., backpay, loss of income and benefits).  Pls.' Mem. Support of Mot. Class Cert., at 5-7.  Such relief cannot be sought under Rule 23(b)(2) of the Federal  Rules of Civil Procedure.  *See Wal-Mart Stores*, 131 S.Ct. at 2557 (plaintiffs may not bring claims for monetary relief under Rule 23(b)(2) of the Federal Rules of Civil Procedure where such relief is not incidental to injunctive or declaratory relief also being sought).   Thus, given this requested relief, Plaintiffs' class cannot be certified under Rule 23(b)(2).  *See id*. (Fed. R. Civ. P. 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of money damages.").

**B.    This Case Should Be Dismissed in Entirety.**

**1.    Standard of Review**

Federal courts are courts of limited jurisdiction, and a plaintiff bringing a case to federal court must establish a basis for the court's subject matter jurisdiction. *Steel Co. v. Citizens For A Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S.

379, 382 (1884)). "It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

In considering a Rule 12(b)(1) motion, the Court should construe the complaint liberally, granting a plaintiff the benefit of inferences that can be derived from the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court should not, however, accept inferences unsupported by the facts alleged, nor need it accept legal conclusions cast as factual allegations. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citations omitted).

When a complaint is attacked by motion pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, the court should grant the motion and dismiss the complaint if the plaintiff fails to meet his or her obligation "to provide the 'grounds' of [his or her] 'entitle[ment] to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570; *accord Ashcroft v. Iqbal*, 129 S.Ct. at 1951-1952.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is one that could change the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 243 (1986). While all evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the nonmoving party - when faced with a summary judgment motion - has the burden of establishing more than the "mere

existence of a scintilla of evidence" demonstrating a genuine issue in dispute for purposes of defeating the moving party's motion. *See Lester v. Natsios*, 290 F.Supp.2d 11, 19-20 (D.D.C. 2003), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250. As the Supreme Court has stated, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S 317, 323-324 (1986).

## 2.    Plaintiffs Lack Standing.

Two of the principle prongs of the constitutional case or controversy provisions require, *inter alia*, that (i) a plaintiff establish personal injury, and (ii) that injury be redressable by judicial relief. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)(citations omitted). A plaintiff has the burden of pleading facts sufficient to establish standing based upon a personal injury: The litigant must clearly and specifically set forth facts sufficient to satisfy the Article III standing requirements. *Id.* "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Id.*; *see also Kurtz v. Baker*, 829 F.2d 1133, 1138-39 (D.C. Cir. 1987)(The Court must police its jurisdiction by examining each of the plaintiff's alleged injuries for compliance with the requirement that they be personal and concrete.).

Plaintiffs in this case should be dismissed from this action because they failed to satisfy standing requirements. Specifically, they have identified no personal injury. As explained by the Supreme Court in *Whitmore v. Arkansas*,

> To establish an Art. III case or controversy, a litigant first must clearly demonstrate that he has suffered an "injury in fact." ***That injury, we have emphasized repeatedly, must be concrete in both a qualitative and temporal sense***. The complainant must allege an injury to himself that is distinct and

palpable,. . .as opposed to merely [a]bstract,. . .and the alleged harm must be actual or imminent, not "conjectural" or "hypothetical". . .Further, the litigant must satisfy the "causation" and "redressability" prongs of the Art. III minima by showing that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

495 U.S. at 155 (internal citations omitted)(emphasis added).

Plaintiffs have not established injury in fact. As detailed in the Statement of Facts supporting this memorandum, Plaintiffs have failed to identify or describe any specific Library policy or practice which actually resulted in non-promotion or denial of work assignments to them within sixty days of the filing of their administrative complaint.[5] Plaintiffs thus fail the personal injury prong of the standing requirements, i.e., they have not alleged an injury that is personal or concrete. *See, e.g. Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994)(Normally, an employee who was not aggrieved by a. . .particular hiring requirement lacks standing to challenge that. . .requirement.); *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir.1996) (In order for an individual plaintiff to have constitutional standing to bring a Title VII action, he must show that he was *personally injured* by the defendant's alleged discrimination and that his injury will likely be redressed by the requested relief.)(emphasis added); *Lander v. Montgomery County Bd. of Com'rs*, 159 F.Supp.2d 1044, 1058 (S.D.Ohio 2001), citing, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61(1992)(In order to have constitutional standing to bring a Title VII action, [employee] must show that he [or she] personally was injured by the [employer's] alleged discrimination and that his [or her] injury likely will be redressed by the relief sought.); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D.Kan. 2004), citing, *Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)(To have

---

[5]*Compare Cook* Complaint in which the plaintiff identified the specific vacancies for which he applied, the timeframe (month and date), and the reasons given for his non-selection. Ex. 1, Cook Compl., pp. 18-21.

standing to sue on a class's behalf, the plaintiff must be an adequate class representative. The

plaintiff must be a part of the class and "possess the same interest and suffer the same injury" as

class members.)(citation omitted).

Further, it is well established that Title VII is the exclusive remedy for employment

discrimination claims raised by federal employees. *See Brown v. General Servs. Admin.*, 425

U.S. 820, 835 (1976). However, this statute does not confer a freestanding right upon employees

to challenge their employers' allegedly discriminatory policies without making some showing

that the policy at issue specifically affected them. Basic principles of standing remain applicable

in this context, and courts have thus rejected attempts to challenge race-conscious policies absent

some showing that the claimant was actually affected by the policy at issue. *See Los Angeles v.

Lyons*, 461 U.S. 95, 101 (1983)(abstract injury is not enough for purposes of standing); *Wooden

v. Board of Regents of the Univ. System of Georgia*, 247 F.3d 1262, 1282-83 (11th Cir. 2001)

(holding that plaintiff who was eliminated from consideration prior to the stage where race was

considered lacked standing to sue); *see also Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir.

2005)(To have standing in a disparate impact case under Title VII, a plaintiff must "demonstrate

*either* that he or she was denied an employment opportunity because of a practice prohibited by

statute; or that he *or* she was qualified for the opportunity sought and was denied it and therefore,

by inference, was subjected to discrimination.)(citation omitted). Having failed to identify any

injury redressable under Title VII, Plaintiffs' suit must be dismissed in its entirety.[6]

---

[6]Plaintiff Rowland also fails the redressability prong of the standing requirements.
Mr. Rowland has been retired from the Library since 2006. He therefore is not and will not be
subject to any of the policies or practices of the Library that pertain to its employees. In *City of
Los Angeles v. Lyons*, the Supreme Court held that the standing of the plaintiff "depended on
whether he was likely to suffer future injury from the use of chokeholds by police officers." 461
U.S. at 104. The Court held that the plaintiff lacked standing to seek injunctive relief because

(cont'd on the following page)

**3.    Plaintiffs' Claims Under the Human Rights Act Are Barred on Multiple Grounds.**

In their memorandum in support of class certification, Plaintiffs allege claims of disparate impact (or adverse impact) in violation of the Human Rights Act.  Pls.' Mem. Support Mot. Class Certification, at 4.  Plaintiffs do not provide a citation for the Human Rights Act pursuant to which they are suing.  However, to the extent that they are alleging such claims under the District of Columbia Human Rights Act, D.C. Code 2-1402.11, the claims are barred by sovereign immunity.  *See, e.g., Benham v. Rice*, No. Civ.A. 0301127(HHK), 2005 WL 69187, *3 (D.D.C. March 24, 2005)(Court held that the United States was immune from suit under the District of Columbia Human Rights Act for federal employee's discrimination claims).   Further, Plaintiffs must seek relief for their discrimination claims under Title VII as this statute provides the exclusive remedy for such claims.  *Brown v. General Services Administration*, 425 U.S. at 835.  Finally, Plaintiffs failed to raise any claims pursuant to the Human Rights Act in their Second Amended Complaint filed on December 11, 2006, and should be precluded from raising such claims over seven years later.  *Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012)("Undue delay is a valid reason to reject a party's attempt to add a new theory of liability to a complaint.").   In summary, the Court should dismiss Plaintiffs' Human Rights Act claims with prejudice for lack of subject matter jurisdiction or failure to state a claim.

---

"he has made no showing that he is realistically threatened by a repetition of his experience."  *Id.* at 109.  "The same rationale. . .would also have kept [Lyons] from bringing a suit for declaratory relief."  *Fair Employment Counsel of Greater Washington v. BMC Marketing Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994).  Thus, Mr. Rowland, who is no longer subject to the conduct he challenges, does not have standing to seek declaratory or injunctive relief.

### 4.    Plaintiffs Failure to Promote Claims Are Barred By Collateral Estoppel.

It is no surprise if this case has the specter of *deja vu*.  Plaintiffs are essentially bringing, or attempting to bring, what can be fairly characterized as *Cook II*.  Both suits involve the same primary claim – specifically, a challenge to the Library's promotion practices.  In *Cook*, the plaintiffs brought suit on behalf of themselves and all past, present and future black employees and applicants for employment.  Ex. 1, Cook Compl., p. 12.  Similarly, in this suit, Plaintiffs, all African-American employees, bring suit on behalf of "all minority job applicants and all past, current, and future minority employees of the Library of Congress (the proposed 'Class')."  R. 28, Pls.' Second Am. Compl. ¶ 2.  In *Cook*, the plaintiff alleged that minority employees are disproportionately concentrated in lower-paying positions.  Ex. 1, *Cook* Compl., p. 25.   In this suit, Plaintiffs allege that the Library fails to promote minority employees to higher levels.   Pls. Second Am. Compl. ¶ 2.  In *Cook*, the plaintiffs alleged unequal recruitment standards, refusals to hire, and denials of promotion.  Ex. 1, Cook Compl, p. 24.  In this suit, Plaintiffs allege similar claims.  Pls. Second Am. Class Action Compl., ¶ 11.

Plaintiffs' claims based on discriminatory promotion practices are precluded under the doctrine of collateral estoppel.  Issue preclusion or collateral estoppel precludes "relitigation of the issue in a suit on a different cause of action involving a party to the first case."  *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94).  Here, this doctrine bars Plaintiffs' claims based on promotions and recruitment.  Pls.' Second Am. Compl. ¶ 2.b and 2.d.

The *Cook* settlement agreement addressed discrimination claims based on both competitive and non-competitive selections in or into professional and administrative positions within the Library.  Ex. 2, Settlement Agreement, ¶ 31.  Plaintiffs make the same claim in this

lawsuit to the extent that they are challenging the Library's selection process.   R. 264, Pls.'

Mem. Support Mot. Class Cert., p. 4.  This is the same claim that was addressed in the *Cook*

settlement agreement resulting in the three step hiring process to which Plaintiffs agreed and

which still exists today.  *Cook v. Billington*, 2003 WL 24868169, *2.

The law is clear on this issue - a settlement agreement "intended to release a claim or

permanently resolve an issue implicitly forecloses" future litigation of that claim or issue on

grounds of collateral estoppel.  *Carter v. Rubin*, 14 F.Supp.2d 22, 34 (D.D.C. 1998); *Miller v.*

*United States*, 603 F.Supp. 1244, 1251 (D.D.C. 1985)(holding that plaintiff's discrimination

claims were barred by "settlement agreement in which [the plaintiff] undertook, for substantial

consideration, not to raise the events covered by [the] action in subsequent administrative or

judicial claims.").   Given the foregoing, Plaintiffs' promotion claims raised in this suit are

barred on grounds of collateral estoppel.

### 5.   Plaintiffs Fail to State A Cognizable Claim Based on Failure to Promote.

Title VII recognizes two types of discrimination claims – disparate treatment and

disparate impact.  "Disparate treatment claims can be brought as class actions as well." *Munoz v.*

*Orr*, 200 F.3d 291, 299 (5th Cir. 2000).  Plaintiffs in a class action disparate treatment case must

show a "pattern and practice" of discrimination by the employer, i.e., that "'racial discrimination

was the [employer's] standard operating procedure-the regular rather than the usual practice'".

*Id.*, quoting, *Teamsters v. United States*, 431 U.S. 324, 336 (1977).  However, "[p]roving isolated

or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of

a pattern or practice of discrimination[,]" i.e., disparate treatment. *Cooper v. Federal Reserve*

*Bank of Richmond*, 467 U.S. 867, 875-76 (1984).

Disparate impact claims do not require intent to discriminate. *Munoz*, 200 F.3d at 299, quoting, *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971); accord *Moore v. Summers*, 113 F.Supp.2d 5, 19 (D.D.C. 2000). Rather, under this theory, it is enough for [the employee] to show that the challenged employment practices, though facially neutral in their treatment of different groups. . .in fact fall more harshly on one group than another and cannot be justified by business necessity. *Id*, quoting, *Teamsters*, 431 U.S. 335 n. 15. "An employee *must identify specific practices* as being responsible for any observed disparities, . . .*and must conduct a systemic analysis* of those employment practices in order to establish their case." *Munoz*, 200 F.3d at 299 (citation omitted)(emphasis added).

In this suit, Plaintiffs have pled both disparate treatment and disparate impact claims. R. 28, Pls. Second Am. Class Action Compl., ¶¶ 4 and 28. Under either theory, however, Plaintiffs' claims based on failure to promote must be dismissed. Plaintiffs' disparate treatment claims fail because none of the Plaintiffs, with the possible exception of Mr. Knight, identified a specific position for which they applied (and for which they were subsequently denied) during the sixty day period before filing their administrative complaint. And even Mr. Knight failed to identify which specific positions can and do serve as the basis for his discrimination claim.

Significantly, Plaintiffs' failure to identify the positions that serve as the basis of their non-promotion claims prevents Defendant from articulating as to whether there were legitimate reasons for any identified instance of promotion denial (e.g., lack of qualification) and the Court from considering whether summary judgment is appropriate based on the Library's articulated reasons. *See, e.g., McKnight v. Graphic Controls Corp.*, No. 98-CV-0662E(H), 2000 WL 1887824, *6 (W.D.N.Y. Dec. 11, 2000) (Court noted that the plaintiff had failed to "reveal[] the existence of any position for which he had, or would have, applied and was, or expected to be,

24

subsequently rejected." The Court added that "because [the] plaintiff ha[d] not revealed the existence of any position for which he had, or would have, applied, it [was] impossible for [the] Court to ascertain whether he would have been qualified for such position and whether he suffered an adverse employment decision in the form of a rejection." The Court thus concluded that the plaintiff "ha[d] not met his burden of establishing an inference of impermissible discrimination with respect to his claim of failure to promote.").

Accordingly, having failed to present sufficient facts and evidence to support a Title VII claim based on denial of a promotion or position, Plaintiffs' disparate treatment class claims based on or the Library's promotion procedures and policies must be dismissed for failure to state a claim upon which relief may be granted. *See, e.g. Housley v. Boeing Co.*, 177 F.Supp.2d 1209, 1222 (D.Kan. 2001)(In the failure-to-promote and failure-to-hire context, every Circuit that has addressed this issue has required a plaintiff, as part of that plaintiff's prima facie case, to come forward with evidence of a specific vacant position for which the plaintiff was qualified and on which the plaintiff's claim is based.).

Plaintiffs' disparate impact claims must also fail. Plaintiffs have not identified or described any *specific* Library practices or polices responsible for any purported disparities disadvantaging African Americans in promotion determinations. Accordingly, Plaintiffs' disparate impact claims based on the Library's promotion and selection policies and practices must be dismissed. *Munoz*, 200 F.3d at 299; *see also Prince v. Rice*, 453 F.Supp.2d 14, 27 (D.D.C. 2006)(In dismissing the plaintiff's disparate impact claim, the Court stated, "not even the most generous reading of [the plaintiff's] factual allegations unearths any identification of a specific employment practice that is generally applicable and facially-neutral, but has functioned disproportionately with respect to plaintiff or members of her protected class. There is likewise

no mention of the existence of any statistical or empirical data that may support causation.");

*O'Brien v. City of Philadelphia*, 837 F.Supp. 692, 698 (E.D.Pa. 1993)(To make out a prima facie

case on [disparate] impact, a plaintiff must first demonstrate that it is the application of *a specific*

*or particular employment practice* that has created the disparate impact under attack.)(emphasis

added).

> **6.      Plaintiffs Fail to Identify A Cognizable Adverse Action Regarding
> Their Claims Related to Discipline, Training, Telework and
> Performance Evaluations**

As it applies to the federal government, Title VII prohibits discriminatory personnel

actions affecting employees.  42 U.S.C. § 2000e-16(a).  The Supreme Court has said that, to be

subject to Title VII, a personnel action is a "tangible employment action" that is "a significant

change in the employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits."

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1988).  To determine whether a claim

relates to a tangible adverse employment action under the Supreme Court's description, the D.C.

Circuit has examined whether there is an "objectively tangible harm[,]" *Brown v. Brody*, 199

F.3d 446, 457 (D.C. Cir. 1999), "that is adverse in an absolute sense[,]" *id.*, at 458, and has an

immediate effect on employment.  *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001),

quoting, *Mungin v. Katten, Muchin & Zavis*, 116 F.3d 1549, 1555 (D.C. Cir. 1997).

None of the Plaintiffs have alleged any specific disciplinary action taken against them,

nor have they alleged how they have been materially injured by their performance evaluations or

by the Library's alleged denial of their training or telework requests (assuming such requests

were timely made for purposes of suit).  *See generally*, R. 28, Pls. Second Am. Class Action

Compl.; Def.'s Statement of Facts Not In Dispute, ¶¶ 4 - 8.  Indeed, to the extent that any of the

Plaintiffs even bothered to articulate any facts (albeit, sketchy ones) as related to their

performance evaluations, they have stated that the evaluations they have received while

employed by the Library have been "positive". *Id.* ¶ 5.  The District of Columbia Circuit has

held that a performance evaluation, negative or otherwise, is not an adverse action absent effect

on terms, conditions, or privileges of an employee's employment.  Plaintiffs have presented no

evidence whatsoever regarding what, if any, ill-effect they have suffered as it relates to their

performance evaluations (or training, telework or disciplinary claim).  Accordingly, their claims

should be dismissed  i.e, they fail to allege an adverse employment action.  *See Russell v.*

*Principi*, 257 F.3d 815, 819 (D.C. Cir. 2002)(negative performance evaluations are not adverse

actions absent some effect on terms, conditions or privileges of employment); *Dorns v.*

*Geithner*,692 F.Supp.2d 119, 133 (D.D.C. 2010)(decreased performance appraisals and denial of

training requests are not adverse employment actions); *Manuel v. Potter*, 685 F.Supp.2d 46, 66-

67 (D.D.C. 2010)(non-receipt of training opportunities is not adverse action); *Sewell v. Chao*,

532 F.Supp.2d 126, 137 (D.D.C. 2008)(denial of training and transfer to another department do

not constitute adverse employment actions); *Mack v. Strauss*, 134 F.Supp.2d 103, 114 (D.D.C.

2001) (Delayed evaluation does not constitute an actionable injury because it is not accompanied

by some adverse change in the terms, conditions or privileges of employment); *Reynolds v.*

*Service America Corp*., No. 95 C 7413, 1998 WL 30700, *11 (N.D.Ill. Jan. 21, 1998)(Receipt of

negative performance evaluations *alone*, even if undeserved, cannot constitute an adverse

employment action.);  *Smith v. ASC, Inc.*, 148 F.Supp.2d 302, 313 (S.D.N.Y. 2001)(concluding

that "not allowing [the plaintiff] to work from home. . .[did] not constitute adverse employment

action [] as a matter of law"): *Hornberg v. UPS*, 2006 WL 2092457, at *9 (D. Kan. July 27,

2006)(telecommuting is a personal preference, denial of request was not an adverse employment

action); *Daniels v. FRB of Chi.*, 2006 WL 861969, at *12 (N.D. Ill. March 31, 2009)(refusal of request to permit telecommuting is not adverse employment action).

       **7.**     **The *Cook* Order Establishes the Library's Non-Discriminatory Reason.**

The ultimate issue in an employment discrimination case is whether the employee has met his or her burden of proving that an adverse employment action was motivated at least in part by intentional discrimination.  If the employee succeeds in establishing a *prima facie* case of discrimination, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action.  *See McDonnell Douglas*, 411 U.S. at 802.  The burden on the employer is one of production, not persuasion - it can involve no credibility determination.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 144 (2000), *quoting*, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993).  Once it is established that both parties have met their respective burdens, the burden shifting scheme becomes irrelevant, *Hicks*, 509 U.S. at 510, and "the sole remaining issue is discrimination *vel non*."  *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003).

As indicated above, Plaintiffs have not established a *prima facie* case of discrimination for their non-promotion claims – none have identified any positions which they sought and (and were denied) based on the use of alleged discriminatory promotion and selection procedures. Def.'s Statement of Facts Not In Dispute, ¶¶ 1, 2 and 3.  As also noted above, they have failed to identify the alleged discriminatory promotion and selection procedures purportedly used by the Library that resulted in any disparate impact.  Thus, Plaintiffs have not met the threshold requirement for a suit based on non-selection under Title VII.

Further, the Library has an irrefutable reason for using the promotion and selection procedures at issue in this case -- it was bound to do so by Court Order.  *Cook v. Billington*, Civil

Action No. 82-0400(GK)(Docket Entry No. 836, Order, attached hereto as Ex. 3). The Court Order in *Cook v. Billington* made the parties' Joint Report part of the record and defined the Library's obligations as relates to the job election process. *Id.* Further, the Court described the Library's selection process - the very one used by the Library during the relevant period of this suit - as a validated hiring process comporting with the Uniform Guidelines on Employee Selection procedures. *Cook v. Billington*, 2003 WL 24868169, *2. Notably, the validated selection process was one agreed to by both parties in *Cook*. *Cook v. Billington*, Civil Action No. 82-0400(GK)(Docket Entry No. 836, Order, attached hereto as Ex. 3). The Library's use of this Court-ordered selection process is unarguably a legitimate basis for its actions as relates to promotions and selection, and any challenge to use of this process must be rejected.

## III.    CONCLUSION

For reasons stated above, Plaintiffs' motion for class certification should be denied, and further, their complaint should be dismissed, or alternatively, summary judgment granted to Defendant.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney

DANIEL F. VAN HORN
Chief, Civil Division

/s/ Beverly M. Russell
BEVERLY M. RUSSELL, DC Bar No. 454257
beverly.russell@usdoj.gov
JULIA K. O'BRIEN
jdou@loc.gov
United States Attorney's Office for the
  District of Columbia, Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
Ph:  202-252-2531 (BMR)
Ph:  202-707-7198 (JKO)
Fax:  202-252-2599