**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CHRISTINE MILLS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 04-2205 (RBW) |
| ) | |
| CARLA HAYDEN,[1] in her official ) | |
| capacity as the Librarian of Congress, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiffs, Christine Mills, Runako Balondemu, Geraldine Duncan, David Hubbard, Priscilla Ijeomah-Mills, Clifton Knight, Charles Mwalimu, Lawrence Perry, Sharon Taylor, and William Rowland, bring this civil action against the defendant, Carla Hayden, in her official capacity as the Librarian of Congress, asserting discrimination based on their race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. See Second Amended Class Action Complaint ("2d Am. Compl.") ¶ 27, ECF No. 28.[2] Currently pending before the Court is the Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment ("Def.'s Mot."), ECF No. 269, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56.

---

[1] Carla Hayden is substituted for James H. Billington as the current proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] In their Second Amended Complaint, the plaintiffs framed their claims, in part, as a class action lawsuit that is intended to represent "all minority job applicants and all past, current and future minority employees of the Library of Congress[.]" 2d Am. Compl. at 1. After the judge initially assigned to this case denied the plaintiffs' class certification and dismissed this case, see Order at 2 (Mar. 30, 2016), ECF No. 277, a second judge reinstated the case in part, but declined to revive the class, see Order at 3–4 (July 6, 2018), ECF No. 292. Therefore, the plaintiffs are now proceeding as private, non-class plaintiffs.

Upon careful consideration of the parties' submissions,[3] the Court concludes for the following reasons that it must grant the defendant's motion to dismiss.

## I.    BACKGROUND

### A.    Factual Background

The following allegations are derived from the plaintiffs' Complaint, unless otherwise specified.  The plaintiffs are "African-American [men and women] who ha[ve] been employed with the Library of Congress in the non[-]professional series since about January 1, 2003," 2d Am. Compl. ¶ 6, where the plaintiffs allege that the defendant subjected them to "an ongoing pattern and practice of discrimination[,]"  id. ¶ 2.  The plaintiffs represent that this "ongoing pattern and practice of discrimination[,]" id., is ultimately rooted in the fact that "[t]he [d]efendant promotes a two[-]tier classification system" of professional or non-professional positions "with Caucasians dominating the professional tier while the minorities fill the non-professional ranks[,]" id. ¶ 20.  They contend that this two-tier classification system "adversely impacts the [p]laintiffs" because the defendant allegedly treats these positions differently in a variety of ways.  Id.  The plaintiffs represent that "[t]he [d]efendant's organizational structure creates a segregated working environment in which the [p]laintiffs work in groupings that are separate and apart from their Caucasian co-employees[,]" id. ¶ 15, and that "[t]he [p]laintiffs disproportionately fill positions that the [d]efendant treats as dead-end careers[,] and as a result[,] [the p]laintiffs suffer from work place frustration and are prone to find themselves in hostile

---

[3] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Memorandum in Support of [Her] Motion to Dismiss Plaintiffs' Complaint, or Alternatively, for Summary Judgment ("Def.'s Mem."), ECF No. 268; (2) the Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Pls.' Opp'n"), ECF No. 296; (3) the Defendant's Memorandum in Support of Her Reply to Plaintiffs' Opposition to Her Motion to Dismiss Plaintiffs' Complaint, or Alternatively, for Summary Judgement ("Def.'s Reply"), ECF No. 298; (4) the Defendant's Motion for Sanctions Against Plaintiffs for Disobeying Discovery Order ("Def.'s Mot. for Sanctions"), ECF No. 120; and (5) the Defendant's Notice of Filing Documents Related To Pending Discovery-Related Motions, ECF No. 136.

work environments[,]" id. ¶ 18, and they "are not afforded meaningful work place training that could provide an opportunity for work place advancement[,] . . . further exacerbat[ing] their frustration of being placed in dead[-]end jobs[,]" id. ¶ 19.  The plaintiffs further represent that "[t]he [d]efendant has failed to proportionately offer [the p]laintiffs incentives for advancement in their careers as [she] has done in relation to those positions primarily filled by [her] Caucasian employees[,]" id. ¶ 17, and that "[t]he [d]efendant's policies and operating practices dissuade[] [the p]laintiffs from moving from the non-professional tier to the professional tier" in part because the defendant "does not properly consider actual on[-]the[-]job work experience gained by the [p]laintiffs so that they may move from the non-professional tier to the professional tier" and by requiring "superfluous education requirements" for job openings, id. ¶¶ 21–22.  The plaintiffs also represent that "[t]he [d]efendant has imposed and imposes disproportionate disciplinary actions against the [p]laintiffs that [she] does not impose upon [her] Caucasian workforce for work[-]related conduct that is similar in terms of breaches of any mandated employer protocols, rules, and regulations."  Id. ¶ 16.  Finally, the plaintiffs represent that

> [t]he [d]efendant is acutely aware that [her] minority employees are discriminated against by [her] policies and practices, yet rather th[a]n seek to amend these policies to mitigate the harm[,] the [d]efendant has fortified [her] policies by limiting or corrupting the remedial purposes of the various offices intended to assist [the p]laintiffs with their grievances . . . .

Id. ¶ 23.

## B.    Procedural Background

This case has a long and complicated procedural history, dating back to 2004, see Complaint ("Compl.") at 1, ECF No. 1, and the Court will not describe it in full here.  The Court will, however, briefly summarize the current procedural posture of the case relevant to the resolution of the defendant's pending motion to dismiss.

On April 2, 2007, the plaintiffs filed their Second Amended Complaint.  See 2d Am. Compl. at 1.  On April 9, 2010, the defendant filed her first motion to dismiss, see generally Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment, ECF No. 172, based on, inter alia, the plaintiffs' lack of personal injury and failure to state a cognizable claim, see Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment at 1, ECF No. 172.  On September 15, 2011, this case was reassigned from the first judge who had been assigned this case to another member of this Court. See Reassignment of Civil Case at 1, ECF 220.  Subsequently, on March 12, 2013, that second judge denied the motion "insofar as [the] motion [was] based on failure to exhaust administrative remedies[,]" and "the doctrine of res judicata."  Order at 1 (Mar. 12, 2013), ECF No. 233.

Thereafter, on April 25, 2014, the plaintiffs moved to certify a class pursuant to Local Rule 23(1) and Federal Rule of Civil Procedure 23(b)(3).  See Plaintiff's Motion for Class Certification at 1, ECF No. 263.  On May 20, 2014, the defendant filed her combined opposition to class certification and motion to dismiss, or alternatively, for summary judgment.  See generally Def.'s Mot.; Defendant's Memorandum in Support of [Her] Motion to Dismiss Plaintiffs' Complaint, or Alternatively, for Summary Judgment ("Def.'s Mem."), ECF No. 268. In response, the prior counsel for the plaintiffs submitted an incomplete filing that did not address the defendant's arguments beyond class certification.  See generally Reply Memorandum for Plaintiffs in Support of their Motions for Bifurcation and Class Certification and in Opposition to Defendant's [ ] Motion to Dismiss or for Summary Judgment, ECF No. 274; see also Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Pls.' Opp'n") at 1, ECF No. 296 (noting that "prior counsel failed to respond to the motion to dismiss").  That judge assigned to

preside over the case at that time denied class certification and dismissed the case pursuant to Local Civil Rule 7(b). <u>See</u> Order at 1 (Mar. 3, 2016), ECF No. 277.

On April 14, 2016, the plaintiffs, then proceeding <u>pro se</u>, moved for reconsideration of the dismissal of their case. <u>See</u> Motion for Reconsideration at 1, ECF No. 279. On July 6, 2018, the then-assigned judge granted the motion in part and denied it in part. <u>See</u> Memorandum-Decision and Order at 9–10 (July 6, 2018), ECF No. 292. Specifically, that judge vacated the judgment and reinstated the case but denied reconsideration of the prior judge's denial of the plaintiffs' motion for class certification. <u>Id.</u> at 10.

On July 6, 2018, this case was reassigned to this Court. <u>See</u> Reassignment of Civil Case at 1, ECF No. 293. Subsequently, on September 14, 2018, the plaintiffs filed their opposition to the defendant's May 2014 motion to dismiss, which addressed "the general arguments regarding collateral estoppel and standing[,]" Pls.' Opp'n at 2, and "reserve[d] the right to refile [the plaintiffs'] motion for class-certification," <u>id.</u> at 2 n.1. The defendant filed her reply in support of her motion to dismiss on October 15, 2018. <u>See</u> Defendant's Memorandum in Support of Her Reply to Plaintiffs' Opposition to Her Motion to Dismiss Plaintiffs' Complaint, or Alternatively, for Summary Judgement at 1, ECF No. 298 ("Def.'s Reply").[4]

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(1)

"Federal [district] courts are courts of limited jurisdiction[,]" <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of

---

[4] The Court regrets the lengthy delay in resolving the current motion to dismiss. It was only after the Court was able to parse the problems caused by the multiple reassignments of judges in both this case and a related case that it has been able to turn its attention to the resolution of the pending motion to dismiss in this case. Subsequent mismanagement of the transfer of the case from a departing to an incoming law clerk resulted in the issuance of this opinion being delayed, along with a number of other cases that also required the issuance of memorandum opinions.

Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'"

Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v.

Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if

it "lack[s] . . . subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Because "[i]t is to be

presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377,

the plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction, see

Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

"In deciding a [Rule] 12(b)(1) motion, the [C]ourt need not limit itself to the allegations

of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp.

2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings

as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."

Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see Jerome

Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005); Caul v.

U.S. Capitol Police, No. 15-1243 (BAH), 2016 WL 2962194, at *5 (D.D.C. May 19, 2016) ("[I]n

evaluating subject matter jurisdiction, the [C]ourt, when necessary, may undertake an

independent investigation to assure itself of its own subject matter jurisdiction and consider facts

developed in the record beyond the complaint." (quoting Settles v. U.S. Parole Comm'n, 429

F.3d 1098, 1107 (D.C. Cir. 2005)) (internal citations and quotations omitted); see also Artis v.

Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of

the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject[]

matter jurisdiction."). Additionally, the Court must "assume the truth of all material factual

allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the

benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed.

Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a [Rule] 12(b)(1) motion than in resolving a [Rule] 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13–14 (first and second alterations in original) (internal quotation marks omitted).

**B.    Rule 12(b)(6)**

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged."  Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555).  Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]"  Hettinga, 677 F.3d at 476.  Finally, the Court "may consider

only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.     ANALYSIS

The defendant moves to dismiss the plaintiffs' suit on several grounds. First, the defendant asserts that the plaintiffs have "not alleged an injury that is personal or concrete" sufficient to show that they have standing. Def.'s Mem. at 19. Specifically, the defendant argues that "[the p]laintiffs have failed to identify or describe any specific Library policy or practice which actually resulted in non-promotion[s] or denial of work assignments to them[.]" Id. The defendant also contends that the plaintiffs' discrimination claims under Title VII must be dismissed because (1) "none of the [p]laintiffs, with the possible exception of Mr. Knight, identified a specific position for which they applied (and for which they were subsequently denied[,])" id. at 24, which "prevents [the d]efendant from articulating as to whether there were legitimate reasons for any identified instance of promotion denial (e.g., lack of qualification)[,]" id.; and (2) the "[p]laintiffs have not identified or described any specific Library practices or policies responsible for any purported disparities disadvantaging African Americans in promotion determinations[,]" id. at 25. The defendant further asserts that the plaintiffs' claims relating to discipline, training, telework, and performance evaluations must also be dismissed because "[n]one of the [p]laintiffs have alleged any specific disciplinary action taken against them, nor have they alleged how they have been materially injured by their performance evaluations or by the Library's alleged denial of their training or telework requests[.]" Id. at 26.[5]

---

[5] The defendant also argues that the "[p]laintiffs' claims based on discriminatory promotion practices are precluded under the doctrine of collateral estoppel" because the plaintiffs are "essentially bringing, or attempting to bring" the same suit as in Cook v. Billington, No. 82-0400 (GK), 2003 WL 24868169 (D.D.C. Sept. 8, 2023), a prior

(continued . . .)

In response, the plaintiffs claim that "[b]ecause [they] clearly have standing, have claims which are not subject to collateral estoppel, and have stated claims of relief under Title VII . . . , [the d]efendant's [m]otion should be denied." Pls.' Opp'n at 1. First, the plaintiffs contend that dismissal is not warranted because they have "adequately pled and demonstrated sufficient specific actions by the [d]efendant to show an injury in fact[,]" specifically:

> (a) that Caucasian employees are paid higher than minority employees; (b) that minority employees are promoted at a significantly lower rate than Caucasian employees; (c) that [the d]efendant assigns higher wage grades and step increases to Caucasian employees than [she] does to minority employees, and assigns the less desirable jobs to [her] minority employees; (d) that [the d]efendant's recruitment policies are designed to benefit Caucasian applicants; (e) that [the d]efendant maintains a hostile work environment to minority employees; and (f) that [the d]efendant retaliates against employees who complain about discrimination.

Id. at 2 (citing 2d Am. Compl. ¶ 2). The plaintiffs further assert that "[e]ach named [p]laintiff has alleged that he or she has been injured by these practices." Id. at 2–3 (citing 2d Am. Compl. ¶ 6).

The Court will first consider whether any of the plaintiffs' claims are moot. If they are not, the Court will then consider the plaintiffs' standing to bring their claims. Finally, the Court will consider whether the plaintiffs have stated a claim upon which relief can be granted.[6]

---

(. . . continued)
"challenge to the Library's promotion practices" brought "on behalf of . . . all past, present and future black employees and applicants for employment." Def.'s Mem. at 22. However, because the Court ultimately concludes that the plaintiffs have failed to state a claim upon which relief can be granted and, thus, the defendant's motion to dismiss pursuant to Rule 12(b)(6) must be granted, the Court need not address this argument.

[6] The defendant also asks the Court to dismiss the plaintiff's claims under "the Human Rights Act," to the extent they are alleging claims under the District of Columbia Human Rights Act, D.C. Code 2-1402.11. Def.'s Mot. at 21. Because the plaintiffs did not raise these claims in their Second Amended Complaint or their opposition to the defendant's motion to dismiss, the Court need not address them.

**A.      Whether William Rowland and Christine Mills' Claims Are Moot**

The defendant challenges the standing of William Rowland, contending that he "fails the redressability prong of the standing requirements[]" because he retired from the Library of Congress in 2006 and "is not and will not be subject to any of the policies or practices of the Library that pertain to its employees[,]" resulting in him "not hav[ing] standing to seek declaratory or injunctive relief." Def.'s Mem. at 20 n.6. The plaintiffs respond that Mr. Rowland does have standing because "standing is determined at [the] time the complaint is filed (2004), not years later." Pls.' Opp'n at 3 n.2; see Hardaway v. D.C. Hous. Auth., 843 F.3d 973, 977 (D.C. Cir. 2016) ("[T]he standing inquiry focuses on whether the plaintiff has demonstrated injury 'at the outset of the litigation.'" (quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), 528 U.S. 167, 180 (2000)). Although the parties have framed this dispute as relating to standing, the Court concludes that in light of Mr. Rowland's retirement and the recent death of Christine Mills, for whom the defendant submitted a notice of suggestion of death on July 16, 2024, see Notice of Suggestion of Death at 1–2, ECF No. 304; see also Plaintiff's Response to Court's August 1, 2024 Order at 1, ECF No. 306 (confirming that Christine Mills "has an estate and a representative who intends to continue this matter on her behalf"), the Court must also assess whether these two plaintiffs' claims are moot. See Garden St. Broad. Ltd. P'ship v. Fed. Commc'n Comm'n, 996 F.2d 386, 394 (D.C. Cir. 1993) (noting that "[m]ootness and standing are related concepts" and that "[t]he Supreme Court has characterized mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980))).

"Article III of the Constitution restricts the federal courts to deciding only 'actual, ongoing controversies,'" Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997) (quoting Honig v. Doe, 484 U.S. 305, 317 (1988)), and therefore "a federal court has no 'power to render advisory opinions [or] . . . decide questions that cannot affect the rights of litigants in the case before them[,]'" id. (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)) (first and second alterations in original) (internal quotation marks omitted).  Moreover, "[e]ven where litigation poses a live controversy when filed, . . . [the C]ourt [must] refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (quoting Transwestern Pipeline Co. v. Fed. Energy Regul. Comm'n, 897 F.2d 570, 575 (D.C. Cir. 1990)).[7]

There are two exceptions to the mootness doctrine.  First, under the "capable of repetition, yet evading review" exception, a case is not rendered moot where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."  Ill. Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 187 (1979) (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam)).  Second, under the "voluntary cessation" exception, "voluntary cessation of allegedly illegal conduct does not deprive [a court] of power to hear and determine the case," and voluntary cessation will only moot a case if (1) "there is no reasonable expectation . . . that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Cnty. of L.A. v. Davis, 440 U.S. 625, 631 (1979) (internal quotation marks

---

[7] "This limitation 'subsists through all stages of federal judicial proceedings . . . .'"  Id. (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)).

omitted).  Although neither of the parties addressed the mootness doctrine in their filings, the

Court must assess whether any of the plaintiffs' claims are moot because it is obligated to <u>sua</u>

<u>sponte</u> address whether it has subject-matter jurisdiction even if the parties do not.  <u>See</u> Fed. R.

Civ. P. 12(h)(3); <u>Poblete v. U.S. Marshals Serv.</u>, 207 F. Supp. 3d 1, 2 (D.D.C. 2016) ("[S]ubject

matter jurisdiction may not be waived, and . . . courts may raise the issue <u>sua sponte</u>.").

The plaintiffs do not seek compensatory damages such as backpay.[8]  Rather, they seek

declaratory and injunctive relief regarding the defendant's challenged policies and practices, as

well as "any and all equitable remedies necessary to provide the [ ] [p]laintiffs . . . with full relief

from the discrimination they have suffered[.]"  2d Am. Compl. at 11.  The Court will address

plaintiffs William Rowland and Christine Mills' claims for injunctive and declaratory relief in

turn.

### 1. William Rowland and Christine Mills' Claims for Injunctive Relief

"[T]o obtain prospective injunctive relief, a plaintiff must show a real and immediate

threat of future injury to establish a viable case or controversy."  <u>Johnson v. District of</u>

<u>Columbia</u>, 248 F.R.D. 46, 56 (D.D.C. 2008) (citing <u>City of L.A. v. Lyons</u>, 461 U.S. 95, 103–04

(1983)).  When a plaintiff seeks injunctive relief, he or she may not "simply rely on past injury to

show standing."  <u>Johnson,</u> 248 F.R.D. at 56.  Indeed, the plaintiff must establish that he or she

has "sustained[,]" <u>Lyons</u>, 462 U.S. at 102, or is "immediately in danger of sustaining some direct

injury as the result of the challenged official conduct[,]" <u>id.</u>  The "injury or threat of injury must

be both real and immediate, not conjectural or hypothetical."  <u>Id.</u> (internal quotation marks

omitted); <u>see also</u> <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal

---

[8] Christine Mills, in a related case, has requested the award of compensatory damages, including back pay.  <u>See</u>
<u>Mills v. Hayden</u> ("<u>Mills II</u>"), No. 1:17-cv-01257, Discrimination Complaint and Additional Evidence at 6, ECF
No. 1.

conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").  And, in order to avoid dismissal under the doctrine of mootness, "[t]he requisite personal interest that must exist at the commencement of litigation [ ] must continue throughout its existence[.]"  Garden St. Broad. Ltd. P'ship, 996 F.2d at 394 (quoting Geraghty, 445 U.S. at 397).

Here, the plaintiffs request that the Court: (1) "[p]ermanently enjoin[] and prohibit[] [the d]efendant and [her] officers, agents, employees[,] and successors from continuing to engage in the [challenged] practices," 2d Am. Compl. at 10; and (2) "[p]ermanently enjoin[] and require[e] [the d]efendant to adopt policies and practices that ensure the cessation of all discriminatory practices affecting the [ ] [p]laintiffs . . . and requir[e] the institution of such measures as to ensure that these practices do not reemerge[,]" id.  In light of the fact that plaintiffs William Rowland and Christine Mills no longer work at the Library of Congress, their requested declaratory and injunctive relief can have no practical effect because "[the Court] can do nothing to affect [these plaintiffs'] rights relative to" their former employer's challenged policies and practices, "thus making [these claims] classically moot for lack of a live controversy."  Akiachak Native Cmty. v. U.S. Dep't of Interior, 827 F. 3d 100, 106 (D.C. Cir. 2016).  Further, the plaintiffs' claims do not fall under either of the exceptions to the mootness doctrine, because the defendant did not voluntarily cease the challenged policies and practices, see Davis, 440 U.S. at 631, and because there is not "a reasonable expectation that the[se] [plaintiffs] would be subjected to the same action again[]" in light of the fact that neither of them works for the Library of Congress and there is no indication from the record that William Rowland has returned or seeks to return to the Library of Congress as an employee in the future, Ill. Bd. of Elections, 440 U.S. at 187 (quoting Weinstein, 423 U.S. at 149). Accordingly, the Court

concludes that the claims for injunctive relief by plaintiffs William Rowland and Christine Mills are moot.

## 2. William Rowland and Mills' Claims for Declaratory Relief

The Court next turns to William Rowland and Christine Mills' claims for declaratory relief. The plaintiffs request that the Court "[a]djudicate[e] and declar[e] that [the d]efendant's conduct as set forth [in the Second Amended Complaint] in violation of [Title VII of the Civil Rights Act of 1964.]" 2d Am. Compl. at 10.

"[T]he D.C. Circuit has indicated that where [ ] plaintiff[s] seek[] both declaratory and injunctive relief pertaining to unlawful agency action, and where the latter has been mooted, an outstanding request for the former will not operate to bar mootness[.]" Cierco v. Lew, 190 F. Supp. 3d 16, 27 (D.D.C. 2016), aff'sd on other grounds sub nom. Cierco v. Mnuchin, 857 F.3d 407 (D.C. Cir. 2017). The Circuit has enumerated three possible outcomes when plaintiffs' claims for declaratory relief regarding agency action taken against the plaintiffs pursuant to an unlawful policy are moot: (1) the plaintiffs can invoke the "capable of repetition, yet evading review" or "voluntary cessation" exceptions to continue the litigation and challenge the policy; (2) the plaintiffs "lack[] standing to attack future applications of that policy," and "the court is unable to award relief[;]" or (3) the plaintiffs "ha[ve] standing to challenge the future implementation of that policy," and "declaratory relief may be granted if the claim is ripe for review." City of Hous. v. Dep't of Hous. & Urb. Dev., 24 F.3d 1421, 1429–30 (D.C. Cir. 1994).

The Court has already determined that neither the "voluntary cessation" or "capable of repetition, yet evading review" exceptions apply. And, plaintiffs Rowland and Christine Mills do not "ha[ve] standing to challenge the future implementation of [the defendant's] policy" because neither still work at the Library of Congress and there is nothing in the record to suggest they may be subject to any future implementation of that policy. See id.; see also Lujan, 504

U.S. at 560 (emphasizing that a viable injury in fact must be "actual or imminent, not conjectural or hypothetical" (quoting <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990)) (internal quotation marks omitted). Therefore, because these plaintiffs "lack[] standing to attack future applications of [the defendant's challenged] polic[ies]," "the [C]ourt is unable to award relief" to them. <u>City of Hous.</u>, 24 F.3d at 1429–30. Accordingly, the Court concludes that the claims of plaintiffs William Rowland and Christine Mills are moot and, therefore, must be dismissed.

**B.    Whether the Remaining Plaintiffs Have Standing to Bring Their Discrimination Claims**

The defendant contends that the remaining plaintiffs have "not alleged an injury that is personal or concrete" sufficient to show that they have standing. Def.'s Mem. at 19.[9] Specifically, the defendant argues that the "[p]laintiffs have failed to identify or describe any specific Library policy or practice which actually resulted in non-promotion[s] or denial of work assignments to them[.]" <u>Id.</u> In response, the plaintiffs assert that they have "adequately pled and demonstrated sufficient specific actions by the [d]efendant to show an injury in fact[,]" Pls.' Opp'n at 2, namely that they and other minority employees, compared with their Caucasian colleagues, are: (1) paid less; (2) promoted at a "significantly lower rate[;]" (3) assigned lower wage grades, lower step increases, and less desirable jobs; (4) injured by recruitment policies "designed to benefit Caucasian applicants;" (5) subjected to a hostile work environment; and (6) retaliated against for complaining about discrimination. <u>Id.</u> (citing 2d Am. Compl. ¶ 2). The plaintiffs further assert that "[e]ach named [p]laintiff has alleged that he or she has been injured by these practices." <u>Id.</u> at 2–3 (citing 2d Am. Compl. ¶ 6).

---

[9] The Court will hereafter refer to the remaining nine plaintiffs collectively as "the plaintiffs."

Anyone who has Article III standing has standing to bring an action under Title VII.  See Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp., 28 F.3d 1268, 1278 (D.C. Cir. 1994) (noting that Title VII permits suits by "anyone who satisfies the constitutional requirements" (quoting Gray v. Greyhound Lines, 545 F.2d 169, 176 (D.C. Cir. 1976))).  Thus, because Title VII "specifically permit[s] any 'person claiming to be aggrieved' by an unlawful employment practice to file suit[,] . . .  [t]his language . . . opens the courts to 'anyone who satisfies the constitutional requirements.'"  Id. (citations omitted).  "To demonstrate standing under Article III of the Constitution, [the plaintiffs] must show an injury in fact caused by the defendant and redressable by judicial relief."  Stilwell v. Off. of Thrift Supervision, 569 F.3d 514, 518 (D.C. Cir. 2009) (citing Lujan, 504 U.S. at 560–61).  The party invoking federal jurisdiction bears the burden of establishing these elements of standing, i.e., injury-in-fact, causation, and redressability.  See id.  Moreover, because they are not merely pleading requirements, but "rather an indispensable part of the plaintiff[s'] case," Lujan, 504 U.S. 561, each element must be supported in the same manner as any other issue on which the plaintiffs bear the burden of proof, see id.

### 1.  Whether the Plaintiffs Have Alleged an Injury in Fact

The defendant argues that the plaintiffs "have identified no personal injury[,]" Def.'s Mem. at 18, because they have "failed to identify or describe any specific Library policy or practice which actually resulted in non-promotion[s] or denial of work assignments to them within sixty days of the filing of their administrative complaint[,]" id. at 19.  The plaintiffs respond that they have "adequately pled and demonstrated sufficient specific actions by the [d]efendant to show an injury in fact."  Pls.' Opp'n at 2.

To establish an injury in fact, plaintiffs must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not

conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks omitted); see also Spokeo v. Robins, 578 U.S. 330, 339–40 (2016) (defining a "particularized" injury as one that "affect[s] the plaintiff in a personal and individual way" and a "concrete" injury as a "real, and not abstract" injury that "must actually exist" (internal quotation marks omitted)); Am. Chemistry Council v. Dep't of Transp., 468 F.3d 810, 820 (D.C. Cir. 2006) ("Article III does not require actual harm . . . . [I]mminent harm will suffice."). "Although imminence is concededly a somewhat elastic concept," Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013), for claims seeking prospective relief, "[a]n allegation of future injury may suffice [as imminent] if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur[,]" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (citation omitted); Clapper, 568 U.S. at 409 (distinguishing between threatened injury that is "certainly impending," which constitutes injury in fact, and "[a]llegations of possible future injury," which are insufficient) (alteration in original) (citations omitted); see also TransUnion LLC v. Ramirez, 594 U.S. 413, 435–36 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." (first citing Clapper, 568 U.S. at 414 n.5; then citing Lyons, 461 U.S. at 102)).

    Although a plaintiff seeking prospective relief "may not rest on past injury" alone to establish standing, Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015); see Dearth v. Holder, 641 F.3d 499, 501 (D.C. Cir. 2011) (noting that "past injuries alone are insufficient to establish standing[]" in this context), "[p]ast wrongs may serve as evidence bearing on whether there is a real and immediate threat of repeated injury," Jibril v. Mayorkas, 20 F.4th 804, 814 (D.C. Cir. 2021) (alteration in original) (citations and internal quotation marks omitted). Moreover, past

exposure to illegal conduct, when accompanied by "any continuing, present adverse effects," may suffice to support Article III standing in a case seeking declaratory and injunctive relief. O'Shea, 414 U.S. at 496; see also Dearth, 641 F.3d at 501 (requiring plaintiffs to show they are suffering from "an ongoing injury or face[] an immediate threat of injury").

As indicated earlier, here, the plaintiffs argue that they have alleged specific injuries, namely:

> (a) that Caucasian employees are paid higher than minority employees; (b) that minority employees are promoted at a significantly lower rate than Caucasian employees; (c) that [the d]efendant assigns higher wage grades and step increases to Caucasian employees than [she] does to minority employees, and assigns the less desirable jobs to [her] minority employees; (d) that [the d]efendant's recruitment polices are designed to benefit Caucasian applicants; (e) that [the d]efendant maintains a hostile work environment to minority employees; and (f) that [the d]efendant retaliates against employees who complain about discrimination

Pls.' Opp'n at 2 (citing 2d Am. Compl. ¶ 2).  Moreover, to reiterate, the plaintiffs further assert that "[e]ach named [p]laintiff has alleged that he or she has been injured by these practices." Id. at 2–3 (citing 2d Am. Compl. ¶ 6).  The plaintiffs also contend that "[e]ach named [p]laintiff has similarly articulated various examples of how they have been injured by [the d]efendant's practices which have resulted in discriminatory or retaliatory evaluations, selections/promotions, denial of awards/overtime, discipline, and pay, including some examples of specific positions [the plaintiffs were] not selected for or promoted to."  Id. at 3.[10]

---

[10] In support of their position, the plaintiffs appear to rely on exhibits attached to several of the defendant's prior filings, including the plaintiffs' interrogatory responses, which, at the time, the defendant argued were deficient and sanctionable.  See generally Def.'s Mot. for Sanctions, Exs. 1–11 (Plaintiffs' Amended Supplemental Responses to Defendant's First Set of Interrogatories, May 11, 2009); Defendant's Notice of Filing Documents Related To Pending Discovery-Related Motions, Ex. 2 (Plaintiffs' Second Supplemental Response to Defendant's First Set of Interrogatories Relating to the Second Amended Complaint to Plaintiffs), ECF No. 136-2.  However, because the Court "may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case[,]"  Scolaro, 104 F. Supp. 2d at 22, the Court will consider these exhibits in determining whether the plaintiffs have standing.

The Court concludes for the following reasons that the plaintiffs have indeed articulated specific injuries relating to their employment with the defendant. First, the plaintiffs allege that they applied for positions for which they were qualified but were never selected. <u>See</u> Defendant's Motion for Sanctions Against Plaintiffs for Disobeying Discovery Order ("Def.'s Mot. for Sanctions"), Exhibit ("Ex.") 2 (Plaintiffs' Supplementary Responses to Defendant's First Set of Interrogatories Relating to the Second Amended Complaint to Plaintiffs ("Runako Balondemu Suppl. Resp.")) at 1–2, ECF No. 120-2 (alleging that Balondemu applied for other positions twice but "felt pressured to cancel his application"); <u>id.</u>, Ex. 8 (Plaintiffs' Supplementary Responses to Defendant's First Set of Interrogatories Relating to the Second Amended Complaint to Plaintiffs ("Geraldine Duncan Suppl. Resp.")) at 6, ECF No. 120-8 (representing that Duncan had applied "for over 30 higher positions"); <u>id.</u>, Ex. 4 (Plaintiffs' Supplementary Responses to Defendant's First Set of Interrogatories Relating to the Second Amended Complaint to Plaintiffs ("David Hubbard Suppl. Resp.")) at 5, ECF No. 120-4 (stating that Hubbard sought higher positions, such as a "Copyright Information Specialist GS-9" and other promotions within his unit); <u>id.</u>, Ex. 5 (Plaintiffs' Supplementary Responses to Defendant's First Set of Interrogatories Relating to the Second Amended Complaint to Plaintiffs ("Priscilla Ijeomah-Mills Suppl. Resp.")) at 1, ECF No. 120-5 (stating that the Ijeomah-Mills had "applied for numerous positions and fought for promotions/reclassifications in her position[,]" but "was never selected for any of these positions[]"); <u>id.</u>, Ex. 3 (Plaintiffs' Supplementary Responses to Defendant's First Set of Interrogatories Relating to the Second Amended Complaint to Plaintiffs ("Clifton Knight Suppl. Resp.")) at 14–24, ECF No. 120-3 (listing Knight's job applications); <u>id.</u>, Ex. 7 (Plaintiffs' Supplementary Responses to Defendant's First Set of Interrogatories Relating to the Second Amended Complaint to Plaintiffs ("Charles Mwalimu Suppl. Resp."))

at 1, ECF No. 120-7 (representing that Mwalimu applied to be the "Chief of the Eastern Division"); id., Ex. 9 (Plaintiffs' Supplementary Responses to Defendant's First Set of Interrogatories Relating to the Second Amended Complaint to Plaintiffs ("Lawrence Perry Suppl. Resp.")) at 6, ECF No. 120-9 (providing a specific vacancy announcement for which Perry applied); id., Ex. 11 (Plaintiffs' Supplementary Responses to Defendant's First Set of Interrogatories Relating to the Second Amended Complaint to Plaintiffs ("Sharon Taylor Suppl. Resp.")) at 4, ECF No. 120-11 (stating that Taylor had "sought to become a permanent Library employee and was denied that opportunity").

The Court also concludes that the plaintiffs have alleged injuries relating to their pay. Specifically, the plaintiffs allege that they are paid less than similarly situated Caucasian employees and many list the names of specific Caucasian employees who they allege are appropriate comparators. See id., Ex. 2 (Runako Balondemu Suppl. Resp.), at 4; id., Ex. 8 (Geraldine Duncan Suppl. Resp.) at 5; id., Ex. 4 (David Hubbard Suppl. Resp.), at 5; id., Ex. 5 (Priscilla Ijeomah-Mills Suppl. Resp.), at 5; id., Ex. 3 (Clifton Knight Suppl. Resp.), at 5–6; id., Ex. 7 (Charles Mwalimu Suppl. Resp.), at 4–5; id., Ex. 9 (Lawrence Perry Suppl. Resp.), at 5.[11] The plaintiffs further represent that this disparity "also diminishes the pension benefits available" to them. 2d Am. Compl. at 2.

The Court further concludes that the plaintiffs have sufficiently alleged injuries relating to harassment. Specifically, the plaintiffs allege that they have been injured by the "continuing pattern and practice of harassment of minority employees by Caucasian employees," which the plaintiffs allege the defendant has maintained or failed to control. 2d Am. Compl. at 2; see

---

[11] One of the plaintiffs, Sharon Taylor, did not claim that she was paid less than similarly situated Caucasian employees; instead, she claims that she, unlike similarly situated temporary employees who were Caucasian, was disqualified during her probationary period and was not made a permanent employee. See id., Ex. 11 (Sharon Taylor Suppl. Resp.), at 1.

Def.'s Mot. for Sanctions, Ex. 2 (Runako Balondemu Suppl. Resp.) at 6 (alleging that Balondemu has been "verbally abused, teased, questioned, and micromanaged[]"); id., Ex. 3 (Clifton Knight Suppl. Resp.) at 8 (alleging that Knight has been "isolated" and "made an outcast" by Caucasian supervisors "due to his race, grade level, and inability to gain a promotion[]"); id., Ex. 4 (David Hubbard Suppl. Resp.) at 6–7 (representing that Hubbard was not "given the same respect as the [Caucasian] employees" and was "routinely subjected to mismanagement and retaliation" by managers); id., Ex. 5 (Priscilla Ijeomah-Mills Suppl. Resp.) at 7 (representing that Ijeomah-Mills has been "harassed by being isolated and not given the same privileges as her [Caucasian] counterparts" and that she "has been disrespected by her manager who yells[] and refuses her promotions, details, and trainings[]"); id., Ex. 7 (Charles Mwalimu Suppl. Resp.) at 6 (representing that Mwalimu "has been verbally abused, subjected to insulting language, and micromanaged to the point of harassment[]" as "the only Black person in his level"); id., Ex. 8 (Geraldine Duncan Suppl. Resp.) at 7 (representing that Duncan's supervisors "put her knowledge and abilities in doubt and suggest[ed] she go back to school although she is clearly knowledgeable and her [Caucasian] co-workers are not required to go back to school" to earn promotions); id., Ex. 9 (Lawrence Perry Suppl. Resp.) at 8 (representing that Perry "has been harassed by being ignored and subjected to arbitrary treatment which can only be attributed to his race[,]" and that his supervisors "ignore his requests to be treated equally[,]" which is "a cause of embarrassment, humiliation, and frustration[]" for him); id., Ex. 11 (Sharon Taylor Suppl. Resp.) at 4 (representing that Taylor "had been singled out in meetings, gossiped about, and [subjected to] other forms of conduct that made her feel that she was being treated differently because she was Black[]").

Finally, the Court concludes that the plaintiffs have also sufficiently established injuries relating to retaliation.  The plaintiffs allege that they have been subjected to retaliation for filing Equal Employment Opportunity Commission ("EEOC") complaints or otherwise raising issues with their superiors.  See Def.'s Mot. for Sanctions, Ex. 2 (Runako Balondemu Suppl. Resp.) at 1, 7 (discussing Balondemu's complaints regarding the challenged practices and retaliation suffered in relation to those complaints); id., Ex. 3 (Clifton Knight Suppl. Resp.) at 11 (same); id., Ex. 4 (David Hubbard Suppl. Resp.) at 9; id., Ex. 5 (Priscilla Ijeomah-Mills Suppl. Resp.) at 9; id., Ex. 7 (Charles Mwalimu Suppl. Resp.) at 8; id., Ex. 8 (Geraldine Duncan Suppl. Resp.) at 9; id., Ex. 9 (Lawrence Perry Suppl. Resp.) at 10; id., Ex. 11 (Sharon Taylor Suppl. Resp.) at 3, 7.

Therefore, having considered the parties' submissions and having "undertake[n] an independent investigation to assure itself of its own subject matter jurisdiction and consider[ed] facts developed in the record beyond the complaint[,]" Caul, 2016 WL 2962194, at *5 (internal quotation marks and citations omitted), the Court concludes that each of the plaintiffs have alleged an actual and "concrete and particularized" injury, City of Dania Beach v. Fed. Aviation Admin., 485 F.3d 1181, 1185 (D.C. Cir. 2007).

### 2. Whether the Plaintiffs Have Established Causation and Redressability

Having established that they sustained an injury in fact, the plaintiffs allege that these injuries were caused by the defendant's challenged policies and procedures, and they seek, inter alia, declaratory and injunctive relief.  See 2d Am. Compl. at 10–11.  With the exception of Mr. Rowland, the defendant does not contend that the plaintiffs have established causation and redressability.

In order to establish causation for the purposes of Article III standing, the plaintiffs must show that there is "a causal connection between the injury and the conduct complained of—the

injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Lujan, 504 U.S. at 560 (alterations in original) (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 41–42 (1976)). And to establish redressability for the purposes of Article III standing, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. (internal citation omitted).

Here, the plaintiffs have identified the specific challenged policies and practices of the defendant that have allegedly injured them. Specifically, the plaintiffs allege that they have been injured by a series of policies relating to promotions, pay, retaliation, and the hostile work environment allegedly maintained by the defendant. See Def.'s Mot. for Sanctions, Ex. 2 (Runako Balondemu Suppl. Resp.) at 1–2; id., Ex. 3 (Clifton Knight Suppl. Resp.) at 1–3; id., Ex. 4 (David Hubbard Suppl. Resp.) at 1–2; id., Ex. 5 (Priscilla Ijeomah-Mills Suppl. Resp.) at 1–2; id., Ex. 7 (Charles Mwalimu Suppl. Resp.) at 1–2; id., Ex. 8 (Geraldine Duncan Suppl. Resp.) at 1–2; id., Ex. 9 (Lawrence Perry Suppl. Resp.) at 1–3; id., Ex. 11 (Sharon Taylor Suppl. Resp.) at 1–2. Because the plaintiffs have challenged policies and practices of the defendant and have alleged that there is a "causal connection between the[ir] injur[ies] and the conduct complained of[,]" Lujan, 504 U.S. at 560, the Court concludes that the plaintiffs have sufficiently established causation for standing purposes. Therefore, the Court concludes that the plaintiffs have established causation for the purposes of Article III standing.

Similarly, because the plaintiffs have tied their injuries to the defendant's challenged policies and practices and have sought to enjoin the defendant from continuing to engage in those practices, the Court concludes that it is "'likely,' as opposed to merely 'speculative,' that the plaintiffs' injuries will be 'redressed by a favorable decision.'" Id. (internal citation omitted).

Therefore, the Court concludes that the plaintiffs have established redressability for the purposes of Article III standing because their alleged injuries were "caused by the defendant and redressable by judicial relief." Stilwell, 569 F.3d at 518 (citing Lujan, 504 U.S. at 560–61).

Having "undertake[n] an independent investigation to assure itself of its own subject matter jurisdiction and consider[ed] facts developed in the record beyond the [C]omplaint[,]" Caul, 2016 WL 2962194, at *5, the Court concludes that each plaintiff has standing to pursue their claims.[12] The Court now must address whether the plaintiffs have stated claims under Title VII.

## C.    Whether the Plaintiffs Have Stated a Title VII Claim

Having concluded that the plaintiffs have standing, the Court next considers whether they have adequately stated claims under Title VII, which the defendant argues they have not. Specifically, the defendant argues that the plaintiffs' discrimination claims fail for two reasons. First, the defendant argues that the plaintiffs' claims alleging disparate treatment must be dismissed on three separate grounds: (1) "as to the claims based on failure to promote . . . [,] [the p]laintiffs fail to allege that they applied for particular positions[;]" (2) "as to the claims based on unfair appraisals and denial of training, . . . [the p]laintiffs . . . fail to allege adverse actions[;]" and (3) "as to the claims based on being assigned lower classifications and paid less, . . . [the p]laintiffs fail to allege sufficient detail to raise an inference of discrimination." Def.'s Reply at 3. The defendant further argues that "[b]ecause [the p]laintiffs vaguely refer to an 'agency-wide policy of vesting supervisors and managers with discretionary authority,' . . .

---

[12] The plaintiffs also argue that they have established standing on an equal opportunity to compete theory. See Pls.' Opp'n at 3 (citing Shea v. Kerry, 796 F.3d 42, 50 (D.C. Cir. 2015)). However, because the Court concludes that the plaintiffs have established standing, the Court need not address this argument.

they fail to identify a specific policy resulting in racial disparities that is sufficient to support a disparate impact claim." Id. at 4 (internal citation omitted).

The plaintiffs respond that they have sufficiently pleaded their Title VII claims. Specifically, the plaintiffs argue that they have sufficiently pleaded discrimination claims for both disparate treatment and disparate impact. The plaintiffs argue that they have "sufficiently stated claims of individual disparate treatment[]" because (1) they "are all African-American or African and [ ] they have complained to their supervisors or human resources personnel about the discriminatory conduct in the Library of Congress[;]" (2) "[t]hey have alleged that they have each individually been paid less; received worse appraisals; assigned lower job classifications; assigned lower wage grades; [and] denied opportunities for training, mentoring, promotion[,] and advancement[;]" and (3) they "had pled sufficient facts showing an inference of discrimination/retaliation by alleging dissimilar treatment by Caucasian employees as well as facts concerning [the d]efendant's alleged overall discriminatory practices." Pls.' Opp'n at 5 (citing 2d Am. Compl. ¶¶ 6, 15–24). The plaintiffs further respond that they have "sufficiently alleged [ ] disparate impact claim[s]" because they "have specifically alleged that as a result of the [defendant's] agency-wide policy of vesting supervisors and managers with discretionary authority, [the p]laintiffs have been subjected to discriminatory compensation, promotions, wage classifications and job assignments, recruitment, harassment, and retaliation." Id. at 6. The Court will address these arguments in turn.

Title VII of the Civil Rights Act of 1964 states that "it is an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging

discrimination under Title VII must therefore show that "(i) he [or she] suffered an adverse

employment action (ii) because of his [or her] race, color, religion, sex, [or] national origin[.]"

Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citing 42 U.S.C. § 2000e-16(a)).

In Chambers v. District of Columbia, the District of Columbia Circuit noted that an adverse

employment action is one that alters the "terms, conditions, or privileges of employment."  35

F.4th 870, 872 (D.C. Cir. 2022).  The phrase "terms, conditions, or privileges of employment" is

intentionally broad because it "evinces a congressional intent 'to strike at the entire spectrum of

disparate treatment of men and women' in employment[.]"  Harris v. Forklift Sys., Inc., 510 U.S.

17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)).

Accordingly, a plaintiff must plead only that an alleged adverse employment action "gives rise to

an inference of discrimination."  Walker v. Johnson, 798 F.3d 1085, 1091 (D.C. Cir. 2015).

"Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as,

in some cases, practices that are not intended to discriminate but in fact have a disproportionately

adverse effect on minorities (known as 'disparate impact')."  Ricci v. DeStefano, 557 U.S. 557,

577 (2009).  Title VII also allows plaintiffs to bring claims for being subjected to a hostile work

environment, see Baloch, 550 F.3d at 1201, as well as for retaliation, see 42 U.S.C. § 2000e-3(a).

Because the plaintiffs make several claims under Title VII, the Court will examine each

in turn. The Court will first examine whether the plaintiffs have stated claims for discrimination.

The Court will then examine whether the plaintiffs have stated hostile work environment claims.

Finally, the Court will analyze whether the plaintiffs have stated retaliation claims.

### 1.  Whether the Plaintiffs Have Stated Claims of Discrimination Under Title VII

To reiterate, "Title VII prohibits both intentional discrimination (known as 'disparate

treatment') as well as, in some cases, practices that are not intended to discriminate but in fact

have a disproportionately adverse effect on minorities (known as 'disparate impact')."  Ricci, 557 U.S. at 577.

Here, the defendant argues that the plaintiffs have failed to state claims for disparate treatment because they have "failed to present sufficient acts and evidence" to support their claim, Def.'s Mot. at 25, and that they similarly failed to state disparate impact claims because they have "not identified or described any specific Library practices or policies responsible for any purported disparities disadvantaging African Americans in promotion determinations[,]" id. (emphasis in original).  The plaintiffs take exception with both positions.  Pls.' Opp'n at 5–6.

The Court will first assess whether the plaintiffs have stated claims of discrimination based on disparate treatment.  Then, the Court will assess whether the plaintiffs have stated claims for discrimination based on disparate impact.  The Court need not decide whether the treatment the plaintiffs claim they were subjected to constitutes adverse employment actions, because the Court ultimately concludes that even if, assuming arguendo, the alleged conduct altered the plaintiffs' "terms, conditions, or privileges of employment," Chambers, 35 F.4th at 876, their Title VII claims still fail because they do not plausibly allege disparate treatment or disparate impact based on their race, see Lee v. McDonough, No. 22-319 (RBW), 2024 WL 3858820, at *7 (D.D.C. Aug. 19, 2024) (Walton, J.) (concluding the same).

### a.     Whether the Plaintiffs Have Stated Claims for Disparate Treatment

To reiterate, the defendant argues that the plaintiffs' disparate treatment claims must be dismissed on three separate grounds: (1) "as to the claims based on failure to promote . . . [,] [the p]laintiffs fail to allege that they applied for particular positions[;]" (2) "as to the claims based on unfair appraisals and denial of training, . . . [the p]laintiffs . . . fail to allege adverse actions[;]" and (3) "as to the claims based on being assigned lower classifications and paid

less, . . . [the p]laintiffs fail to allege sufficient detail to raise an inference of discrimination."
Def.'s Reply at 3.  The plaintiffs argue that they have established all three elements of a disparate
treatment claim because they have "sufficiently stated claims of individual disparate
treatment[,]" as (1) they "are all African-American or African and [ ] they have complained to
their supervisors or human resources personnel about the discriminatory conduct in the Library
of Congress[;]" (2) "[t]hey have alleged that they have each individually been paid less; received
worse appraisals; assigned lower job classifications; assigned lower wage grades; [and] denied
opportunities for training, mentoring, promotion[,] and advancement[;]" and (3) they have "pled
sufficient facts showing an inference of discrimination/retaliation by alleging dissimilar
treatment by Caucasian employees as well as facts concerning [the d]efendant's alleged overall
discriminatory practices."  Pls.' Opp'n at 5 (citing 2d Am. Compl. ¶¶ 6, 15–24).

Under Title VII, it is an "unlawful employment practice for an employer . . . to discharge
any individual, or otherwise to discriminate against any individual with respect to [his or her]
compensation, terms, conditions, or privileges of employment, because of such individual's race,
color, . . . sex, or national origin[.]"  42 U.S.C. § 2000e–2(a).  In order to state a <u>prima facie</u> case
of employment discrimination, a plaintiff must show that "'(1) [he or she] is a member of a
protected class; (2) [he or she] suffered an adverse employment action; and (3) the unfavorable
action gives rise to an inference of discrimination[.]'"  <u>Royall v. Nat'l Ass'n of Letter Carriers,
AFL–CIO</u>, 548 F.3d 137, 144 (D.C. Cir. 2008) (internal citation omitted).  Where, as here,
plaintiffs seek to establish an inference of discrimination based on disparate treatment, the
plaintiffs must "plead[] factual content that allows the [C]ourt to draw [a] reasonable
inference[,]" <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556), that "'all of the relevant
aspects of [his or her] employment situation were nearly identical to those of the [other]'

employee[,]" <u>Burley v. Nat'l Passenger Rail Corp.</u>, 801 F.3d 290, 301 (D.C. Cir. 2015) (second alteration in original) (quoting <u>Neuren v. Adduci, Mastriani, Meeks & Schill</u>, 43 F.3d 1507, 1514 (D.C. Cir. 1995)); <u>see also</u> <u>Harris v. Mayorkas</u>, No. 21-cv-1083 (GMH), 2022 WL 3452316, at *5 (D.D.C. Aug. 18, 2022) (concluding the same) (citing <u>Vaher v. Town of Orangetown</u>, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) ("While a plaintiff is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage, the court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." (internal quotation marks and citations omitted))).

Here, the plaintiffs have failed to establish that they "suffered an adverse employment action" that "gives rise to an inference of discrimination[.]" <u>Royall</u>, 548 F.3d at 144. The plaintiffs argue that they have stated claims for disparate treatment because they have established that (1) they "are all African-American or African and [ ] they have complained to their supervisors or human resources personnel about the discriminatory conduct in the Library of Congress[;]" (2) "[t]hey have alleged that they have each individually been paid less; received worse appraisals; assigned lower job classifications; assigned lower wage grades; [and] denied opportunities for training, mentoring, promotion[,] and advancement[;]" and (3) they have "pled sufficient facts showing an inference of discrimination/retaliation by alleging dissimilar treatment by Caucasian employees as well as facts concerning [the d]efendant's alleged overall discriminatory practices." Pls.' Opp'n at 5 (citing 2d Am. Compl. ¶¶ 6, 15–24).

However, as noted <u>supra</u>, Section II.B., in the context of a motion to dismiss pursuant to Rule 12(b)(6), the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take

judicial notice[,]" Equal Emp. Opportunity Comm'n, 117 F.3d at 624, and, based on the
Complaint, the Court concludes that the plaintiffs have failed to state claims for disparate
treatment.[13]    In their Complaint, the plaintiffs claim that they "have been paid less than similarly
situated Caucasian employees[,]" "have received unfair performance appraisals, and [have] been
assigned lower job classifications, and lower wage grades, and have been denied opportunities
for training, mentoring, promotion[,] and advancement provided to similarly situated Caucasian
employees."  2d Am. Compl. ¶ 24.  The only other factual information contained in the
Complaint that relate to these claims is that the plaintiffs "disproportionately fill positions that
the [d]efendant treats as dead-end career positions[,]" id. ¶ 18, and that they are dissuaded "from
moving from the non-professional tier to the professional tier[,]" id. ¶ 21, because the defendant
"does not properly consider actual on[-]the[-]job work experience gained by [the p]laintiffs" and
requires "superfluous education requirements" in announced job openings, id. ¶ 22.

 These generalized factual assertions are insufficient to state disparate treatment claims.
Although the plaintiffs contend that they have been subjected to disparate treatment compared to
similarly situated Caucasian employees, the Complaint does not inform the Court of any of the
"putative comparator[s'] jobs [or] job duties," nor does it provide the Court any reason to believe
that any "relevant aspects of [the plaintiffs'] employment situation were nearly identical to those
of [the allegedly similarly situated Caucasian employees]."  Burley, 801 F.3d at 301 (quotation
marks omitted) (quoting Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999)).  Therefore, the
"plaintiff[s'] assertion that [they] [are] similarly situated to [the allegedly similarly situated
Caucasian employees] . . . is just a legal conclusion—and a legal conclusion is never enough."

---

[13] The Court notes that there are no documents attached to or incorporated in the Complaint, nor are there any
matters about which the Court may take judicial notice.  As explained below, the Court concludes that it may not
consider the exhibits referenced in the plaintiffs' opposition and considered earlier in the Rule 12(b)(1) context.  See
infra note 14.

Harris, 2022 WL 3452316, at *6 (omission in original).  Absent any other information, the Court cannot reasonably infer that "all of the relevant aspects of [their] employment situation[s] were 'nearly identical' to those" of the other employees who did not suffer similar adverse employment actions.  Neuren, 43 F.3d at 1514 (internal citation omitted); see Budik v. Howard Univ. Hosp., 986 F. Supp. 2d 1, 7 (D.D.C. 2013) (concluding that the plaintiff failed to state a claim for disparate treatment where she "fail[ed] to identify the co-worker's job title, or to allege any facts about the co-worker's experience, seniority, or expertise[,]" and only provided information relating to the co-worker's race).  Similarly, the Complaint provides the Court no factual information relating to the disparate treatment of allegedly similarly situated Caucasian employees relating to: (1) specific unfair performance appraisals given to the plaintiffs; (2) assignment of lower job classifications and wage grades; (3) specific opportunities for training, mentoring, promotion, and advancement that the plaintiffs did not receive; or (4) specific positions the plaintiffs to which applied for and were denied.  See generally 2d Am. Compl. at 2–5, 7–9.  In sum, the Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Therefore, the Court concludes that the plaintiffs have failed to state cognizable claims for disparate treatment.

    **b.**    **Whether the Plaintiffs Have Stated Claims for Disparate Impact**

    The defendant next argues that "[b]ecause [the p]laintiffs vaguely refer to an 'agency-wide policy of vesting supervisors and managers with discretionary authority,' . . . they fail to identify a specific policy resulting in racial disparities that is sufficient to support a disparate impact claim."  Def.'s Reply at 4 (internal citation omitted).  The plaintiffs respond that "[a]t the motion to dismiss stage, a plaintiff need only allege (1) that a defendant uses a particular

employment practice[] which (2) causes a disparate impact on a protected class."  Pls.' Opp'n

at 5 (citing Menoken v. McGettigan, 273 F. Supp. 3d 188, 199 (D.D.C. 2017), aff'd sub nom.

Menoken v. Pon, No. 17-5228, 2018 WL 2383278 (D.C. Cir. May 9, 2018)).  The plaintiffs

further respond that "[s]ubjective and discretionary employment practices are kinds of practices

which may be subject to a disparate impact claim."  Id. at 5–6 (citing Watson v. Fort Worth Bank

& Tr., 487 U.S. 977, 990–91 (1988)).  The plaintiffs contend that they have carried their burden

because they have "sufficiently alleged [ ] disparate impact claim[s]" due to the fact that they

"have specifically alleged that as a result of the [defendant's] agency-wide policy of vesting

supervisors and managers with discretionary authority, [the p]laintiffs have been subjected to

discriminatory compensation, promotions, wage classifications and job assignments, recruitment,

harassment, and retaliation."  Id. at 6 (citing 2d Am. Compl. ¶¶ 2–3).

      "In order to establish disparate[]impact discrimination, [the plaintiffs] must show that a

facially neutral employment policy or practice has a significant disparate impact on a protected

class of which [they are] [ ] member[s]."  Jianqing Wu v. Special Couns., Inc., 54 F. Supp. 3d 48,

54 (D.D.C. 2014), aff'd, No. 14-7159, 2015 WL 10761295 (D.C. Cir. Dec. 22, 2015). "At this

stage in the litigation, to be sure, [the plaintiffs] need not prove a prima facie case of disparate

impact[.]"  Id.  However, "[c]ommon sense and fairness . . . dictate that [they] must, at a

minimum, allege some statistical disparity, however, elementary, in order for the defense to have

any sense of the nature and scope of the allegation."  Id. (alterations in original) (quoting Brady

v. Livingood, 360 F. Supp. 2d 94, 100 (D.D.C. 2004)).  Therefore, although at the pleading stage

a "plaintiff is not required to prove that the employment practice caused a disparate impact[,]"

Young v. Covington & Burling LLP, 736 F. Supp. 2d 151, 161 (D.D.C. 2010) (Walton, J.), it is

"not enough to simply allege that there is a disparate impact on workers, or point to a generalized

policy that leads to such an impact[,]" Menoken, 273 F. Supp. 3d at 199 (quoting Smith v. City of Jackson, 544 U.S. 228, 241 (2005)).

Here, the Complaint challenges the defendant's agency-wide "policy of delegating discretionary authority to managers and supervisors to make [the challenged] employment decisions." 2d Am. Compl. ¶ 3.  The plaintiffs further argue that "[s]ubjective and discretionary employment practices are kinds of practices which may be subject to a disparate impact claim." Pls.' Opp'n at 5–6 (citing Watson, 487 U.S. at 990–91).  However, as the plaintiffs themselves acknowledge, "[i]dentification of a particular practice[] is required, not just that a general policy causes a disparate impact."  Id. at 5 (citing City of Jackson, 544 U.S. at 241) (emphasis added).  While it is certainly true that specific subjective and discretionary employment practices may be challenged under a disparate impact claim, the plaintiffs must nonetheless plead sufficient factual information about those practices to state cognizable claims.[14]  The plaintiffs have failed to do so here.

Further, the plaintiffs have not "allege[d] some statistical disparity, however[] elementary, in order for the defense to have any sense of the nature and scope of the allegation." Jianqing Wu, 54 F. Supp. 3d at 54 (quoting Livingood, 360 F. Supp. 2d at 100). The plaintiffs

---

[14] Although the plaintiffs argue that they have "identified twenty-eight [ ] specific discriminatory practices promulgated by [the d]efendant[,]" id. at 3 (citing Plaintiffs' Amended Supplementary Responses to Defendant's First Set of Interrogatories Relating to the Second Amended Complaint to Plaintiffs, ECF Nos. 120-1, 136-2), in the context of Rule 12(b)(6), the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  Equal Emp. Opportunity Comm'n, 117 F.3d at 624.  Here, the documents the plaintiffs seek to rely on are their amended supplementary responses to the defendant's first set of interrogatories.  These documents are neither attached to nor incorporated in the Complaint itself.  Nor can the Court take judicial notice of the information the plaintiffs rely upon, because the Court may only take judicial notice of a fact that is "not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction[]" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b).  Although the plaintiffs have not moved for the Court to take judicial notice of the allegations they reference, even if they did, the Court could not take judicial notice of the information contained in the plaintiffs' supplementary responses to the interrogatories.  The supplemental responses are included in the record precisely because the defendant found these responses deficient and sanctionable, meaning they are clearly "subject to reasonable dispute[.]"  Id.  Therefore, the Court may not consider the cited documents in its analysis under Rule 12(b)(6).

argue that they "believe that statistical analysis will demonstrate how these practices have harmed them and had an adverse impact on minorities in the manner described in the Second Amended Complaint due to their discretionary and subjective implementation." Pls.' Opp'n at 3. However, as noted above, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n, 117 F.3d at 624. The Complaint merely alleges (1) that "[t]he pay rates for Caucasian employees have been consistently higher than the pay rates for minority employees[,]" 2d Am. Compl. ¶ 2 (emphasis added); (2) that "[m]inority employees are promoted at a significantly lower rate than Caucasian employees[,]" id. (emphasis added); (3) that the defendant "assigns higher wage grades and step increases to Caucasian employees than [she] does to minority employees[,]" id.; and (4) that the plaintiffs "disproportionately fill positions that the [d]efendant treats as dead-end career positions[,]" id. ¶ 18. These conclusory assertions without any supporting facts are not sufficient to "allege some statistical disparity, however[] elementary, in order for the defense to have any sense of the nature and scope of the allegation." Jianqing Wu, 54 F. Supp. 3d at 54 (quoting Livingood, 360 F. Supp. 2d at 100); cf. Young, 736 F. Supp. 2d at 163 (concluding that the plaintiff had sufficiently pleaded a disparate impact claim where she identified a practice of non-promotion, alleged that "'black attorneys are 7.5 times more likely than whites to be subject to [the defendant's] non[-]promotion policy,' and further that 'the number of black staff attorneys is disproportionate to the number of white staff attorneys'" (citations omitted) (second alteration in original)).

Because the plaintiffs' claims regarding the defendant's agency-wide "policy of delegating discretionary authority to managers and supervisors to make [the challenged]

employment decisions[,]" 2d Am. Compl. ¶ 3, merely "point to a generalized policy that leads to such an impact[,]" Menoken, 273 F. Supp. 3d at 199, and because the plaintiffs have failed to "allege some statistical disparity, however[] elementary, in order for the defense to have any sense of the nature and scope of the allegation[,]" Jianqing Wu, 54 F. Supp. 3d at 54 (quoting Livingood, 360 F. Supp. 2d at 100), the Court concludes that the plaintiffs have failed to show that a "facially neutral employment policy or practice has a significant disparate impact on a protected class of which [they are] [ ] member[s][,]" id. Therefore, the Court must conclude that the plaintiffs have failed to state claims for discrimination under Title VII.

## 2. Whether the Plaintiffs Have Stated Claims of Hostile Work Environment Under Title VII

The Court next addresses the plaintiffs' hostile work environment claims, which are based on their allegation that the "[d]efendant maintains, or has failed to control, a continuing pattern and practice of harassment of minority employees by Caucasian employees, resulting in a hostile work environment for [the d]efendant's minority employees." 2d Am. Compl. ¶ 2. The plaintiffs further represent that "[t]he [p]laintiffs disproportionately fill positions that the [d]efendant treats as dead-end career positions and as a result [the p]laintiffs suffer from work place frustration and are prone to find themselves in hostile work environments." Id. ¶ 18. Finally, the plaintiffs represent that they have each been subjected to "a continuing pattern and practice of harassment and [have] been subjected to an ongoing racially hostile work environment." Id. ¶ 24.[15]

---

[15] The defendant does not appear to respond to the plaintiffs' allegations relating to their hostile work environment claims. See generally Def.'s Mem.; Def.'s Reply. Further, the plaintiffs did not raise allegations relating to any potential hostile work environment claims in their opposition to the defendant's motion to dismiss. See generally Pls.' Opp'n. In any event, the plaintiffs bear the burden of "plead[ing] factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Therefore, the Court will address these claims to the extent the plaintiffs have raised hostile work environment claims.

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)). "To prevail on [a hostile work environment] claim, a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Baloch, 550 F.3d at 1201 (quoting Harris, 510 U.S. at 21).  "In determining whether an actionable hostile work environment claim exists, [courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Nat'l R.R. Passenger Corp., 536 U.S. at 116 (quoting Harris, 510 U.S. at 23).

Here, the plaintiffs have failed to present any concrete instances of alleged misconduct in their Complaint.  While the plaintiffs claim that the "[d]efendant maintains, or has failed to control a continuing pattern and practice of harassment of minority employees by Caucasian employees, resulting in a hostile work environment for [the d]efendant's minority employees[,]" 2d Am. Compl. ¶ 2, they provide no factual information regarding specific instances of harassment or any other "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[,]'" Baloch, 550 F.3d at 1201 (quoting Harris, 510 U.S. at 21).  Even granting the plaintiffs the "benefit of all inferences that can be derived from the facts alleged[,]" Hettinga, 677 F.3d at 476, their allegations of a hostile work environment fail because they rest solely on conclusory allegations, not facts, that "are not entitled to the assumption of truth[,]"

Iqbal, 556 U.S. at 679.  Therefore, the Court concludes that the plaintiffs have failed to state

hostile work environment claims under Title VII.

### 3.  Whether the Plaintiffs Have Stated Claims of Retaliation Under Title VII

Finally, the Court addresses the plaintiffs' retaliation claims.  The plaintiffs allege that

"[w]hen minority employees of [the d]efendant complain about the [challenged] practices and

bring them to the attention of management, they are subjected to retaliation."  2d Am.

Compl. ¶ 2.  The plaintiffs further represent that "when they have complained to their

supervisors and Human Resources about these [challenged] practices, they have been retaliated

against."  Id. ¶ 24.[16]

Title VII also makes it unlawful "for an employer to discriminate against any of his

[or her] employees . . . because [the employee] has opposed any practice made an unlawful

employment practice by this subchapter, or because he [or she] has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this

subchapter."  42 U.S.C. § 2000e–3(a).  To plead unlawful retaliation, the plaintiffs must allege

sufficient facts from which it can be reasonably inferred that: (1) they engaged in protected

activity opposing discrimination; (2) they suffered a materially adverse employment action by

their employer; and (3) there was "a causal link between the protected activity and the adverse

action."  Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting Woodruff v.

Peters, 482 F.3d 521, 529 (D.C. Cir. 2007)).  "For purposes of establishing a prima facie case of

retaliation, '[t]emporal proximity can indeed support an inference of causation, but only where

---

[16] As with the plaintiffs' claims for hostile work environment, the defendant does not appear to respond to the plaintiffs' allegations of retaliation, see generally Def.'s Mem.; Def.'s Reply, nor do the plaintiffs address such retaliation claims in their opposition to the defendant's motion to dismiss, see generally Pls.' Opp'n.  Nonetheless, the plaintiffs bear the burden of "plead[ing] factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  Therefore, the Court will address these claims as asserted by the plaintiffs in their Complaint.

the two events are very close in time.'" Id. (quoting Woodruff, 482 F.3d at 529) (alteration in original). Although the Supreme Court has approved circuit court decisions that found three or four months too temporally remote to establish causation, see Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam) (citations omitted) (noting that "the temporal proximity must be 'very close'" to establish causality), the District of Columbia Circuit "evaluate[s] the specific facts of each case to determine whether inferring causation is appropriate," Hamilton, 666 F.3d at 1358.

Here, the Court concludes that the plaintiffs' retaliation claims fail. As with the plaintiffs' hostile work environment claims, the plaintiffs have provided no factual information in their Complaint beyond merely stating broadly that "when they have complained to their supervisors and Human Resources about these [challenged] practices, they have been retaliated against." 2d Am. Compl. ¶ 24. The plaintiffs—having provided no factual information regarding the nature and timing of the alleged retaliation, nor about the timing of their complaints to supervisors—have failed to show that "they suffered a materially adverse employment action by their employer" and that there was "a causal link between the protected activity and the adverse action." Hamilton, 666 F.3d at 1357 (quoting Woodruff, 482 F.3d at 529). These conclusory allegations are "are not entitled to the assumption of truth[,]" Iqbal, 556 U.S. at 679, and therefore do not allow the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged[,]" id. at 678 (citing Twombly, 550 U.S. at 556). Therefore, the Court concludes that the plaintiffs have failed to state claims for retaliation under Title VII.

For the reasons discussed above, the Court concludes that the plaintiffs have not stated claims for discrimination, hostile work environment, or retaliation under Title VII.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss pursuant to Rule 12(b)(6).

**SO ORDERED** this 6th day of November, 2024.[17]

REGGIE B. WALTON
United States District Judge

---

[17] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.